**LUMBERMENS MUTUAL CASUALTY COMPANY, Plaintiff,**

v.

**The BORDEN COMPANY, Inc., Blackstone Mutual Insurance Company, Affiliated F. M. Insurance Company, United Engineers and Contractors, Inc., the Wickes Corporation, Vulcan-Cincinnati Corporation, and Monochem, Inc., Defendants.**

**No. 64 Civ. 1580.**

United States District Court
S. D. New York.

April 7, 1967.

See also D.C., 265 F.Supp. 99.

Townley, Updike, Carter & Rodgers, Philip D. Pakula, New York City, for plaintiff, W. Wright Danenbarger, Joseph P. Fazio, Miles F. McDonald, Jr., New York City, of counsel.

Burke & Burke, New York City, for defendants, J. Frederic Taylor, George I. Harris, Marc J. Loost, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Defendant Vulcan-Cincinnati Corporation (hereinafter referred to as "Vulcan") seeks an order (a) dismissing plaintiff's complaint against it for lack of jurisdiction; (b) staying the action as against Vulcan pending arbitration; and (c) granting summary judgment in favor of defendant Vulcan. Plaintiff Lumbermens Mutual Casualty Company (hereinafter referred to as "Lumbermens") has cross-moved for an order that defendant Vulcan's motions be held

in abeyance pending further discovery by plaintiff as to the issues raised thereby.

## MOTION TO DISMISS FOR LACK OF JURISDICTION

Vulcan claims that jurisdiction was never obtained over it by reason of three different services made by plaintiff on June 11, 1964, July 8, 1964 and May 6, 1966, respectively. The Court will consider each service separately.

*June 11, 1964 service*—It is conceded by Vulcan that this service conformed with the mechanical requirements of Section 307(a) of the New York Business Corporation Law (hereinafter referred to as the "BCL"), McKinney's Consol.Laws, c. 4. This section, at the time of the June 11, 1964 service, read as follows:

(a) Every foreign corporation not authorized to do business in this state which itself or through an agent does any business in this state submits itself to the jurisdiction of the courts of this state and is deemed to have designated the secretary of state as its agent upon whom process against it may be served, in any action or special proceeding arising out of or in connection with the doing of such business. Such process may issue in any court in this state having jurisdiction of the subject matter.

However, Vulcan contends that said service was invalid for two reasons: (a) the BCL is inapplicable to any claims or liabilities accruing prior to its effective date; (b) assuming that the BCL can be applied retroactively, Vulcan is not "doing business" in New York in the traditional sense as is required by BCL § 307.

In support of its first contention, Vulcan relies on BCL § 103(d) which reads as follows:

(d) This chapter shall not affect any cause of action, liability, penalty or action or special proceeding, which on the effective date of this chapter, is accrued, existing, incurred or pending but the same may be asserted, enforced, prosecuted or defended as if this chapter had not been enacted.

Vulcan argues that since the incidents upon which plaintiff's suit is based occurred in 1962 and since the BCL did not become effective until September 1, 1963, BCL § 307(a) was unavailable to plaintiff in this instance. However, Vulcan's interpretation of BCL § 103(d) ignores the plain meaning of the statute and is logically unsound.

█ Section 103(d) of the BCL does not state that this chapter shall not apply to any cause of action or liability accrued or existing on its effective date, but rather states that this chapter shall not *affect* any such cause of action or liability. A cause of action is not "affected" if substantive rights or obligations are not enlarged or impaired. See Simonson v. International Bank, 14 N.Y. 2d 281, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1964).

That BCL § 307(a) is a service statute is clear from the fact that the section is entitled "Service of process on unauthorized foreign corporation" and is contained in Article 3 of the BCL which is titled "Corporate Name and Service of Process". If all BCL § 307(a) does is provide for a new type of service on an unauthorized foreign corporation, it cannot be held to affect the substantive rights of the parties to the law suit.

█ Returning to BCL § 103(d), its whole intendment seems to be that a party may utilize the BCL to pursue a cause of action that arose before its effective date, but that no provision in the BCL can affect the substantive rights and obligations of the parties that arose out of such cause of action. In the context of this case BCL § 307 neither enlarges nor impairs plaintiff's substantive rights against Vulcan. At most, the section merely makes another forum available to plaintiff for rights that are already enforceable. Hence, Vulcan's contention that BCL § 307(a) should not be applied retroactively is unsound.

Additionally, and for reasons to be discussed infra, BCL § 307(a) provides for

a method of service on foreign corporations when jurisdiction is obtainable under the "transacting business" standards of the New York long-arm statute, CPLR § 302. Since CPLR § 302 has clearly been held to apply retroactively, Simonson v. International Bank, supra, BCL § 307 which merely provides an additional method of service when long-arm jurisdiction is attainable, should also be held to apply retroactively.

■ Secondly, Vulcan argues that even if BCL § 307(a) is held to apply retroactively, Vulcan is not "doing business" in New York in the traditional sense as is required by BCL § 307(a). However, after careful consideration of the language and purposes behind BCL § 307(a), it is this Court's conclusion that this section embodies the "transacting business" test of CPLR § 302.[1]

■ To begin with, as it read in 1963, BCL § 307(a) provided for service on an unauthorized foreign corporation that "does *any* business" in New York. The fact that the legislature used the word "any" is significant. If it had been intended merely to codify the traditional "doing business" test, there would have been no reason to include the word "any" in the statute. In addition, BCL § 307 (a) authorized service on the Secretary of State "in any action * * * arising out of or in connection with the doing of such business." If Vulcan's argument is correct, the Court would be asked to hold that when the legislature enacted BCL § 307, it further limited the amenability of a foreign corporation to suit in New York by stating that not only must such corporation be doing business in New York, but that the cause of action must arise out of the doing of such business. That the legislature would have desired to limit a foreign corporation's amenability to suit in New York seems

highly unlikely. In fact, in Professor Hornstein's analysis of the BCL (McKinney's BCL, Appendix 1, at 476 (1963)), it is pointed out that the effect of provisions such as BCL § 307 was to extend potential jurisdiction over foreign corporations in line with the United States Supreme Court's decision in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ When one looks at the language of BCL § 307(a) as it read in 1964 ("does any business" and "arising out of or in connection with the doing of such business"), it bears a striking resemblance to the language of CPLR § 302 ("transacts any business" and "arising from any of the acts enumerated"). Indeed, both statutes became effective on the same date. Furthermore, when both statutes are read together, the legislative intent appears obvious.[2] Section 302 of the CPLR provides a basis for obtaining personal jurisdiction over a foreign corporation within New York. CPLR § 313 provides the normal method for serving foreign corporations that are amenable to suit under CPLR § 302. As has been discussed previously, BCL § 307(a) is solely a service statute. What it really does is provide for another method of service on a foreign corporation that is amenable to jurisdiction under CPLR § 302. The differences in the language of the two statutes is slight. Whatever differences there are may be accounted for by the fact that the BCL and the CPLR were prepared by two distinct bodies (Joint Legislative Committee to Study Revision of Corporation Laws and New York State Law Revision Commission), were conceived for different purposes, and were drafted at different times.

■ Nothing shows the relationship between CPLR § 302 and BCL § 307(a)

1. Pg. 5. For a discussion of the different standards to be applied in the doing business and transacting business tests, see Lumbermens Mutual Casualty Co. v. Borden Co., N.Y., 265 F.Supp. 99, Jan. 31, 1967.

2. Pg. 7. An examination of the legislative history of BCL § 307 and CPLR § 302 has failed to clearly support the contentions of either of the parties.

more clearly than the 1965 amendment to BCL § 307(a) which reads as follows:

(a) In any case in which a non-domiciliary would be subject to the personal or other jurisdiction of the courts of this state under article three of the civil practice law and rules, a foreign corporation not authorized to do business in this state is subject to a like jurisdiction. In any such case, process against such foreign corporation may be served upon the secretary of state as its agent. Such process may issue in any court in this state having jurisdiction of the subject matter.

Doubtless, this amendment was enacted to overcome the difference in language between BCL § 307(a) and CPLR § 302 and to clarify the fact that BCL § 307(a) is a service statute that may be resorted to when jurisdiction over a foreign corporation is attainable under CPLR § 302. Nowhere is the purpose of the clarifying amendment to BCL § 307(a) stated more succinctly than in Professor Hornstein's commentary (McKinney's BCL, Appendix 1 at 43 (Supp.1966)).

"Section 307 authorizing service upon the Secretary of State as agent for an unauthorized foreign corporation which 'does any business in this state' * * * did not conform to the language of CPLR § 302 on the same subject. The former provision has therefore been replaced by a tie-in to the latter."

Hence it is clear that notwithstanding two cases to the contrary,[3] BCL § 307(a) permits the Secretary of State to receive process on behalf of an unauthorized foreign corporation when the defendant corporation transacts business in this state and the cause of action arises out of such transaction of business.

▪ Turning to the facts of this case, it is clear that the acts performed by Vulcan in New York constituted the transaction of business here and that the instant cause of action arose out of such transaction of business. In contrast to the scattered activity of Catalysts and Chemicals, Inc. (hereinafter referred to as "Catalysts") in New York, which led this Court to dismiss plaintiff's complaint as against Catalysts (see Lumbermens Mutual Casualty Company v. Borden Co., S.D.N.Y., 265 F.Supp. 99, Jan. 31, 1967), Vulcan's activities in New York were quite substantial. Whereas Catalysts never entered into a contract with The Borden Company (hereinafter referred to as "Borden"), Vulcan did enter into such a contract, and, moreover, said contract was executed in New York. Whereas Catalysts representatives visited New York at most on two occasions in connection with the negotiation of the Vulcan-Borden contract, Vulcan representatives visited New York on twenty-four different occasions in connection with the negotiations of said contract. Whereas Catalysts representatives made at most two visits to New York subsequent to the execution of the Vulcan-Borden contract, and both such visits concerned settlement discussions, Vulcan representatives made nine such visits, several of which concerned performance of the contract.

In Liquid Carriers Corp. v. American Marine Corp., 2d Cir., 375 F.2d 951, Feb. 28, 1967, the Court of Appeals held that substantial preliminary negotiations conducted in New York, but unaccompanied by other activities after execution of the negotiated contract, were enough to meet the statutory requirements for the transaction of business under CPLR § 302. In the instant case, Vulcan's extensive activities in New York in connection with the Vulcan-Borden contract provide a much stronger basis for this Court to conclude that Vulcan was transacting business in New York.

▪ Furthermore, the Court cannot agree with Vulcan's contention that the instant cause of action did not arise out

3. Pg. 9. Railex Corp. v. White Machine Co., 243 F.Supp. 381 (E.D.N.Y.1965). Central School District No. 2 v. C. R. Evans Co., 49 Misc. 924, 268 N.Y.S.2d 800 (Sup.Ct.1966).

of Vulcan's transaction of business in New York. Plaintiff's claims against Vulcan arise out of several accidents that occurred at Borden's chemical Plant in Geismar, Louisiana. According to the Vulcan-Borden contract, Vulcan was to provide engineering design and procurement services and certain services of erection and operation engineers for the Borden plant. It is plaintiff's contention that Vulcan's actions pursuant to the contract gave rise to the accidents which are the subject of this law suit. Hence, it is clear that the instant cause of action is one "arising from" the purposeful activities engaged in by Vulcan in connection with the negotiation, execution and partial performance of its engineering contract with Borden in New York. See Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965).

*July 8, 1964 service*—Before a determination of the validity of this service can be made, a brief review of the history of defendant Vulcan is in order. Until March 17, 1964, the moving defendant was named Vulcan-Cincinnati, Inc.; since March 17, 1964, its name has been Vulcan-Cincinnati Corp. On that same date, a new corporation, Vulcan-Cincinnati, Inc., was organized. The new corporation purchased the assets of the engineering division of defendant Vulcan-Cincinnati Corp. and assumed all the engineering liabilities (including the type involved in this case) of that defendant. At a hearing held on July 1, 1966, counsel for defendant Vulcan admitted that it was merely a shell corporation, having a tax refund claim as a reason for its existence. Mr. Wentworth, Chairman of the Board of Vulcan-Cincinnati, Inc., was President of defendant Vulcan-Cincinnati Corp.; Mr. Feng, Director of Project Management of Vulcan-Cincinnati, Inc., was a Project Manager of defendant Vulcan-Cincinnati Corp. Both defendant Vulcan-Cincinnati Corp. and Vulcan-Cincinnati, Inc., gave their address as 120–126 Sycamore Street, Cincinnati, Ohio.

Plaintiff attempted to make service on defendant Vulcan-Cincinnati Corp. pursuant to CPLR § 313 by instructing the Marshal in the Southern District of New York to transmit an additional summons to the Marshal in Cincinnati for personal service, in Cincinnati, upon defendant Vulcan-Cincinnati Corp. The Marshal's return, dated July 8, 1964, stated as follows:

On the above date I received this Additional Summons & Complaint at Cincinnati, Ohio and served the VULCAN-CINCINNATI CORPORATION, by personal service on Dr. W. H. STARK, President of Vulcan-Cincinnati Corporation, in his office located at 120–26 Sycamore St., Cincinnati, Ohio at approximately 2:30 PM. Dr. STARK after accepting this service, called his attorney and after talking to his attorney, advised this deputy that he was not accepting this service voluntary and wanted this refusal noted in the return.

Dr. Stark, however, was not in any way connected with defendant Vulcan-Cincinnati Corp., but was President of Vulcan-Cincinnati, Inc.

From these facts, it is apparent that plaintiff unwittingly served the wrong corporation, but that knowledge of such service was most certainly communicated to defendant Vulcan-Cincinnati Corp. The close similarity in the names of the two corporations, that one came into existence only two months before the commencement of this law suit, that both were located at the same address, that the new corporation assumed the liabilities of the old one, that the two corporations had certain officers and directors in common, that the Marshal's return did not mention the reason for Dr. Stark's objection to the service and the fact that defendant Vulcan-Cincinnati Corp. waited almost two years before it attempted to challenge this service (April 15, 1966) were all factors that plaintiff was entitled to rely upon to assume that service had been properly made. Furthermore, the only logical inference to be drawn was that Dr. Stark promptly noti-

fied defendant Vulcan-Cincinnati Corp. of the July 8, 1964 service.

In Marcy v. Woodin, 18 A.D.2d 944, 237 N.Y.S.2d 402 (3d Dep't 1963), service was sustained where a summons, mistakenly delivered to the son of the defendant, was turned over by the son to his father. In Erale v. Edwards, 47 Misc.2d 213, 262 N.Y.S.2d 44 (Sup.Ct. 1965), service was sustained when the summons was delivered to the defendant by the janitor of the apartment building where the defendant resided after the janitor had found the summons in an empty apartment. And in Green v. Morningside Heights Housing Corp., 13 Misc.2d 124, 177 N.Y.S.2d 760 (Sup.Ct.), aff'd, 7 A.D.2d 708, 180 N.Y.S.2d 104 (1st Dep't 1958), service was upheld which was accomplished by handing the summons to a receptionist who, in turn, handed it to the defendant. Although service in these cases did not comply with the literal terms of the applicable statute, each service did accomplish its intended purpose—giving fair and adequate notice to the defendant of the commencement of an action against him. These decisions emphasize "good sense and common business practice" and "are correct in stressing effective and fair notice as the proper criteria." 1 Weinstein-Korn-Miller, New York Civil Practice ¶ 311.06, at 3–114 (1965). Or as stated by Professor McLaughlin, "Where the summons eventually gets to the person intended to be served, and this is admitted by all, it is difficult to justify formal insistence upon the letter of the statute." McKinney's CPLR, 1964 Supplementary Practice Commentary to CPLR § 308, at 114 (Supp.1966). But cf. Ziembicki v. Mott Improvement Corp., 18 A.D.2d 926, 238 N.Y.S.2d 202 (2d Dep't 1963); Paul v. Weiss, 48 Misc.2d 683, 265 N.Y.S.2d 687 (Sup.Ct.), aff'd, 24 A.D.2d 1054, 265 N.Y.S.2d 625 (3d Dep't 1965).

Here, all indications point to the fact that the July 8, 1964 summons was transmitted to defendant Vulcan-Cincin-nati Corp. Nowhere in any of the papers attacking the validity of this service is there any claim that defendant Vulcan-Cincinnati Corp. never received the summons; rather, the only claim is the hypertechnical one that the wrong corporation was served in the first instance. Hence, it is this Court's conclusion that the July 8, 1964 service complied with the requirements of CPLR § 313 and must be upheld. This result is fully in line with the "trend away from the formalism of earlier generations which refused to countenance a mistake in service even in those cases where it conclusively appeared that the defendant was subsequently served by the person who was mistaken for the defendant." McLaughlin, 1966 Supplementary Practice Commentary to CPLR § 308, at 109 (Supp.1966).

Defendant Vulcan further argues that it was impermissible for plaintiff to make multiple services in the same action since the June 11, 1964 service had not been quashed, modified or abandoned at the time of the July 8, 1964 service. Vulcan has failed to cite any competent authority for its novel proposition. In addition, in the circumstances of this case, the Court fails to see how this second service could constitute harassment or oppression of the defendant Vulcan. To the contrary, all indications point to the fact that the second service was attempted for good reason—plaintiff was not certain whether the prior service under BCL § 307 would be upheld.

Finally, it is to be noted that on July 8, 1964, plaintiff served defendant Vulcan pursuant to CPLR § 313 in an attempt to acquire jurisdiction over Vulcan under CPLR § 302. Since it has already been shown supra that Vulcan was "transacting business" in New York within the meaning of CPLR § 302, jurisdiction under that statute was properly acquired. There is no merit to Vulcan's contention that CPLR § 302

ought not to be applied retroactively in this instance. The Court finds no special circumstances to justify an exception to the rule that CPLR § 302 has retroactive effect to the extent of embracing suits instituted after its effective date, but based on previously accrued causes of action. Simonson v. International Bank, supra.

*May 6, 1966 service*—Since the Court has already determined that both the June 11, 1964 service and the July 8, 1964 service were proper, the validity of the third and final service need not be considered.

## MOTION FOR STAY PENDING ARBITRATION

On January 24, 1961, Vulcan and Borden entered into an agreement whereby Vulcan agreed to render certain engineering and procurement services for Borden's chemical plant in Geismar, Louisiana. Article XXXV of said agreement contained a broad arbitration clause which read as follows:

> All disputes shall be submitted to arbitration upon the demand of either party to the dispute. The demand for arbitration shall be delivered in writing to the adverse party. The arbitration shall be conducted in accordance with the rules of the Arbitration Society of America, Inc. The decision of such an arbitration shall be a condition precedent to any right of legal action. The arbitrators shall determine all questions of law involved, including the interpretation, construction and performance under the Contract, by reference to the Ohio Law.

In 1962, several accidents occurred at the Borden plant which caused substantial damage. On April 8, 1964, plaintiff commenced this action seeking a declaratory judgment that it was not liable to Borden with respect to these accidents which Borden claims were covered by two policies of insurance issued by plaintiff. To the extent plaintiff may be held liable to Borden, plaintiff also sought a declaratory judgment against the other named defendants, including Vulcan, who it claims were responsible for the various accidents.

On June 29, 1964, Vulcan moved to dismiss the complaint as against it for lack of personal jurisdiction and to stay discovery on the merits pending the determination of the jurisdictional question. Shortly thereafter, plaintiff stipulated with Vulcan that determination of its objections to personal jurisdiction would be deferred pending discovery on the limited question of personal jurisdiction. Vulcan's jurisdictional motion was eventually withdrawn without prejudice. Vulcan's time to move or answer was extended, pending termination of the limited discovery called for by the stipulation. Discovery was then deferred for a substantial period pending the determination by this Court of several motions made by other defendants. These motions were denied on January 4, 1965.

On January 13, 1966, Vulcan was informed that Borden had reached a settlement of its claims against plaintiff. Shortly thereafter, the Court fixed certain dates (subsequently extended) for the submission of motions by Vulcan. On April 15, 1966, Vulcan filed the instant motion for a stay pending arbitration.

Plaintiff opposes Vulcan's motion for a stay pending arbitration on two distinct grounds: (1) Vulcan has waived its right to arbitration; (2) plaintiff, as Borden's subrogee, is not bound by the arbitration clause.

To sustain its contention that Vulcan has defaulted in proceeding with arbitration, plaintiff relies on 9 U.S.C. § 3 (1964) which reads as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agree-

ment, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Plaintiff claims the fact that Vulcan did not move for a stay pending arbitration until two years after the action was commenced, that in the intervening time Vulcan has made a motion to dismiss on jurisdictional grounds without asserting its arbitration rights, that Vulcan has participated in lengthy and extensive discovery on the question of personal jurisdiction, and that Vulcan never indicated to plaintiff its desire to arbitrate until the instant motion, constitute the type of activity which should compel the Court to conclude that Vulcan is in default in proceeding with arbitration. Plaintiff further claims that Vulcan's delay in seeking arbitration has prejudiced plaintiff since in the intervening period plaintiff has spent considerable time, money and effort in an attempt to discover jurisdictional facts and it is further claimed that plaintiff settled its claims with Borden, in large part, relying on the theory that it could pursue its action against Vulcan in the federal courts.

In Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 410 (2d Cir. 1959), appeal dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960), the Court of Appeals stated that "[A]ny doubts as to the construction of the [United States Arbitration] Act ought to be resolved in line with its liberal policy of promoting arbitration * * * to accord with the original intention of the parties. * * *" The Court further declared that no waiver can be found unless a party acts inconsistently with its right to arbitrate.

The time at which a party will be deemed to have waived arbitration by inconsistent court action was aptly stated in The Belize, 25 F.Supp. 663, 664 (S.D. N.Y.1938), appeal dismissed, 101 F.2d 1005 (2d Cir. 1939) (per curiam), wherein the Court stated:

"Where a party who has agreed to arbitrate any controversy that may arise prefers to take a controversy to court in the ordinary way, there comes a time in the course of the litigation when it would be unfair to permit one side to resort to arbitration over the protest of the other. That time is reached when the defendant files an answer on the merits, joining with plaintiff in rejecting arbitration and tendering the controversy to the court for trial."

Turning to the facts of the instant case, several things are apparent. In the first place, it was plaintiff, not Vulcan, who instituted the present suit. A Court should more easily find a waiver of arbitration by plaintiff since it is the plaintiff who has set the judicial machinery in motion in spite of the existence of an arbitration clause. See Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978, 989 (2d Cir. 1942).

Secondly, Vulcan has not even filed an answer in this suit. Courts in this circuit have consistently held that there is no waiver when a party demands arbitration for the first time in its answer. Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra; Almacenes Fernandez, S. A. v. Golodetz, 148 F.2d 625 (2d Cir. 1945); Kulukundis Shipping Co. v. Amtorg Trading Corp., supra. Three cases on which plaintiff heavily relies, wherein the Court found waiver, are distinguishable since the party seeking the stay had answered the complaint, interposed a counterclaim and had taken further steps leading toward trial before it moved for a stay. Cornell & Co. v. Barber & Ross Co., 123 U.S.App.D.C. 378, 360 F.2d 512 (1966); American Locomotive Co. v. Chemical Research Corp., 171 F.2d 115 (6th Cir. 1948), cert. denied, 336 U.S. 909, 69 S.Ct. 515, 93 L.Ed. 1074 (1949); Radiator Specialty Co. v. Can-

non Mills, 97 F.2d 318, 117 A.L.R. 299 (4th Cir. 1938).

■ Thirdly, while the Court agrees that there was delay between the time this suit was commenced and the time when Vulcan first moved for a stay, it is established that delay alone in moving for an arbitration order will not amount to a default. *Almacenes Fernandez, S. A. v. Golodetz, supra.*

■ Finally, an examination of Vulcan's intervening steps since the commencement of the action cannot be considered as amounting to a waiver. See *Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra.* Soon after the suit was commenced, Vulcan moved to dismiss the complaint against it for lack of jurisdiction. But shortly thereafter, Vulcan agreed to hold its motion in abeyance so that plaintiff could complete discovery as to the jurisdictional facts. Hence, when plaintiff complains about extended discovery, it is really plaintiff's own discovery, and not Vulcan's, which delayed the progress of this law suit.

In addition, it is important to realize that plaintiff's action was one for a declaratory judgment—a judgment primarily declaring that it owed Borden nothing under its policies, but, secondarily, if the decision were otherwise, declaring its rights, if any, against the other defendants. Since, at the time the suit was commenced, there was no direct dispute between Vulcan and Borden or plaintiff, there was no need for Vulcan to then demand arbitration. However, the entire posture of the law suit changed radically in January 1966 when plaintiff settled with Borden. Then, for the first time, Vulcan could expect plaintiff to assert direct claims against it. No longer could Vulcan be considered secondarily, hypothetically or alternatively liable to plaintiff. Under such circumstances it was not unreasonable for Vulcan to seek arbitration for the first time in April 1966.

■ Finally, the Court places little weight on plaintiff's assertion that it settled with Borden in large part in the belief that it could pursue its claims against Vulcan in this Court. Not only does the Court doubt that this factor significantly influenced plaintiff's decision to settle with Borden, but, even if it did, the result would still be the same. Plaintiff must be charged with knowledge of the provisions of the Borden-Vulcan contract, including the arbitration clause. Also, that none of the other defendants seek arbitration should have no bearing on whether this Court is to allow plaintiff's dispute with Vulcan to proceed to arbitration. This is especially so since there has been no showing that the contracts of the other defendants provided for arbitration, or, if so, that they could not have waived their rights without impairing those of Vulcan.

■ Plaintiff further claims that, as subrogee, it is not bound by the arbitration provisions in the contract between its subrogor (Borden) and Vulcan. Both Ohio and New York have similar statutes which declare an arbitration agreement to be irrevocable and enforceable.[4] Although no decision has been found under either Ohio or New York law stating that an arbitration agreement is binding upon and enforceable against the subrogee of a party to the agreement, many courts have enforced arbitration clauses against persons derivatively claiming rights under agreements containing such a clause. *Psaty & Fuhrman, Inc. v. Continental Cas. Co.,* 278 App.Div. 159, 103 N.Y.S.2d 849 (1st Dep't 1951) (against surety); *Cutting Room Appliances Corp. v. National Bronx Bank of New York,* 97 N.Y.S.2d 363 (Sup.Ct.1950) (against assignee); *Crompton-Richmond Co. v. William Nelligan, Inc.,* 2 Misc.2d 882, 151 N.Y.S.2d 154 (City Ct.1956) (against assignee). For other decisions holding that a person not a party to an arbitration agreement may become bound thereby see

---

4. Pg. 26. Ohio Rev.Stat. § 2711.01; New York CPLR § 7501.

Fisser v. International Bank, 282 F.2d 231, 233, n. 6 (2d Cir. 1960).

■ Reasoning by analogy, there is no valid basis in law or equity why an arbitration clause should not be enforced against a subrogee. To hold otherwise would seriously impair the validity of arbitration clauses since either party could escape the effect of such a clause once he has settled with his insurer. Cf. Hosiery Mfrs. Corp. v. Goldston, 238 N.Y. 22, 143 N.E. 779 (1924). Furthermore, it is fundamental law that the insurer, as subrogee, stands in the place of the insured and succeeds to whatever rights or disabilities he may have in the matter. Hence, any rights which plaintiff has are only rights which Borden had, and if Borden's rights were subject to arbitration, plaintiff's rights are subject to arbitration.

■ Finally, plaintiff suggests that in any event the claim that Vulcan was negligent in performance of its services for Borden raises an issue outside the interpretation of the contract which would remain unresolved even after arbitration. But plaintiff's reading of Article XXXV of the Vulcan-Borden contract is unduly narrow. The arbitration clause states that all disputes concerning the "interpretation, construction and *performance under the Contract*" (emphasis added) shall be submitted to arbitration. Clearly, any claim that Vulcan was negligent in connection with its performance under the contract falls within the arbitration clause.

Hence, it is the Court's conclusion that plaintiff's action against Vulcan be stayed pending arbitration. This conclusion makes it unnecessary to consider Vulcan's motion for summary judgment. Finally, plaintiff's cross-motion for further discovery as to the issues raised by Vulcan is denied.

So ordered.