[Civ. No. 57268. Second Dist., Div. Three. Aug. 13, 1980.]

**LOUNGE-A-ROUND, Plaintiff, Cross-defendant and Respondent, v. GCM MILLS, INC., Defendant, Cross-complainant and Appellant.**

192

**COUNSEL**

Buchalter, Nemer, Fields, Chrystie & Younger and John A. Dito for Defendant, Cross-complainant and Appellant.

Freedman & Sobel and Michael C. Baum for Plaintiff, Cross-defendant and Respondent.

OPINION

KLEIN, P. J.—

### STATEMENT OF THE CASE

Appellant GCM Mills, Inc. (GCM) appeals from the denial of its motion to compel arbitration directed against respondent Lounge-A-Round (LAR).

### STATEMENT OF FACTS

During the period of time from May to August 1977, LAR, a California corporation, entered into three contracts with GCM, a corporation with its principal place of business in New York, for the purchase of a particular fabric. Shortly thereafter, in the fall of 1977, a dispute arose as to the quality of the material delivered to LAR. On November 8, 1977, LAR filed a complaint against GCM in the Superior Court of Los Angeles County, alleging breach of contract and breach of warranty. GCM then filed a petition in the United States District Court for the Southern District of New York seeking to compel arbitration in New York. The district court dismissed this petition with prejudice pursuant to a stipulation of the parties and its own deliberations on March 3, 1978.

On March 13, 1978, GCM answered LAR's superior court complaint and filed a cross-complaint which alleged breach of contract and included a claim arising out of a fourth contract with LAR, unrelated to the previous three. In the course of the discovery subsequently undertaken by GCM, LAR answered interrogatories and permitted GCM to examine some of the fabric which was the subject of the dispute.

Thereafter, on December 8, 1978, GCM filed a motion in the pending action to compel arbitration in California. The court denied the motion, ruling: "1. The right of petitioner GCM Mills Inc. to compel arbitration was adversely adjudicated against petitioner in the US District Court (Southern District of New York) and that court's order of

March 3, 1978 dismissing the motion with prejudice is res judicata. [¶] 2. Under California law, petitioner GCM Mills Inc's right to compel arbitration has been waived by making a general appearance in this lawsuit, seeking affirmative relief by a cross complaint and participating in other pre trial proceedings."

## CONTENTIONS

GCM contends that (1) its agreement with LAR provided for arbitration; (2) the instant action is not barred by the doctrine of res judicata as there has been no adverse adjudication; and (3) its right to arbitration has not been waived.

## DISPOSITION

We find these arguments to be unpersuasive for the reasons hereinafter set forth and therefore affirm the judgment (order denying motion to compel arbitration).

## DISCUSSION

■ "In construing a contract providing for arbitration, the Court must first decide whether federal or state substantive law applies. [Citations.] Federal law will govern when the contract evidences a transaction 'involving commerce' [citations]; otherwise state law applies. An examination of the complaint in the [case herein] reveals the requisite transaction 'involving commerce.' The contract is between [two] corporations which are incorporated and which do business in a number of states. . .and it requires the transport of. . .materials in interstate commerce. Accordingly, federal substantive law, as embodied in the federal Arbitration Act, 9 U.S.C. § 1 *et seq.*,[1] will be applied." (*John Ashe Associates, Inc.* v. *Envirogenics Co.* (E.D.Pa. 1977) 425 F.Supp. 238, 241; *Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1977) 67 Cal.App.3d 19, 23-25 [136 Cal.Rptr. 378]; *Communications Wkrs. of America* v. *Pac. Tel. and Tel.* (C.D.Cal. 1978) 462 F.Supp. 736, 739.)

[1]The Arbitration Act provides in pertinent part: "A written provision in. . .a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.)

■ As to the question of whether there was a contract to arbitrate in the first instance, despite a strong federal policy in favor of arbitration, "arbitration is a matter of contract and the parties cannot be forced to arbitrate something to which they did not agree." (*John Ashe Associates, Inc.* v. *Envirogenics Co., supra,* 425 F.Supp. at pp. 241-242; *Georgia Power Co.* v. *Cimarron Coal Corp.* (6th Cir. 1975) 526 F.2d 101, 106.)

The first contract herein derived from an oral agreement between the parties which was confirmed in writing by LAR's purchase order of May 8, 1977. That purchase order contained the following pertinent provisions: "No order is valid unless made upon this form and properly signed on the front hereof. This order may not be varied or changed, nor any of its provisions waived except in writing, signed by an authorized representative of the Purchaser. In addition to any other method of acceptance, Seller's shipping the goods, constitutes Seller's acceptance of all the terms and conditions hereof.

"·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·

"Terms of Seller's order, shipment or approval which are not identical with the terms of this order are not a part of the contract between Seller and Purchaser and are not binding upon purchase."

The words "Calif. Arbitration" were handwritten at the bottom of the purchase order.

In the first week of June 1977, GCM responded with an acknowledgement of order which contained the following provision: "15. ARBITRATION. Any controversy or claim arising out of or relating to this contract, or the performance or the breach thereof, shall be settled by arbitration in New York City in accordance with the Rules of American Arbitration Association. The parties agree that judgment upon an award rendered by the Arbitrators may be entered in any Court having jurisdiction, and that any process or notice of motion or any application

---

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." (9 U.S.C. § 3.)

to such Court, including application for judgment upon an award may be served within or outside of the State of New York either personally or by mail."

According to the affidavit of David Sclar, LAR's agent in the negotiation of the contracts with GCM, Harvey Lipkin, GCM's agent, agreed to strike the words "in New York City" from the above provision and substitute the words "in California" to satisfy LAR's desire to arbitrate any disputes in California, rather than New York. Lipkin initialed the change and Sclar signed the acknowledgement. In its federal court suit, GCM denied that such a change was effected. However, GCM now asserts that the substitution did in fact take place.

Subsequently, in July and August 1977, LAR forwarded to GCM two more purchase orders for the same type of fabric. These purchase orders did not contain an arbitration clause. Rather, they contained the following provision: "5. Purchaser and supplier agree that any disputes arising between them shall be subject to the jurisdiction of the courts of the State of California and further agree that the laws of the State of California shall be applied to resolve any such disputes. No waiver of any claim for consequential damages shall be enforceable." GCM replied to these orders with two acknowledgements of orders which contained the standard clause requiring arbitration in New York City. In neither acknowledgement was the phrase "in New York City" stricken; neither acknowledgement was signed by any agent of LAR.

The situation as to the latter two contracts presents "a classic example of the 'battle of the forms.'" (*Valmont Industries* v. *Mitsui & Co. (U.S.A.)* (D.Neb. 1976) 419 F.Supp. 1238, 1239; *C. Itoh & Co. (America) Inc.* v. *Jordan Intern. Co.* (7th Cir. 1977) 552 F.2d 1228, 1233.) The arbitration provision in GCM's acknowledgement was a new and additional term from those in LAR's purchase order. As such, section 2-207 of the Uniform Commercial Code (U.C.C.) is controlling since the U.C.C. is a primary source for "the 'federal' law of sales." (*Gardiner Manufacturing Co.* v. *United States* (9th Cir. 1973) 479 F.2d 39, 41; *United States* v. *Wegematic Corporation* (2d Cir. 1966) 360 F.2d 674, 676.)

"U.C.C. § 2-207(1) provides that a confirmation may operate as an acceptance even though its terms differ from that of the offer: 'A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even

though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.' Subdivision 2 outlines the effect of the conflicting term: 'The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: (a) *the offer expressly limits acceptance to the terms of the offer*; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.' [¶] The Official Comment to the section clearly indicates that a conflicting clause is to be considered as a notification of objection for the purposes of U.C.C. § 2-207(2)(c): 'Where clauses on confirming forms sent by both parties conflict each party must be assumed to object to a clause of the other conflicting with one on the confirmation sent by himself. As a result the requirement that there be notice of objection which is found in subsection (2) is satisfied and the conflicting terms do not become a part of the contract. The contract then consists of the terms originally expressly agreed to, terms on which the confirmations agree, and terms supplied by this Act, including subsection (2).'" (*Lea Tai Textile Co., Ltd.* v. *Manning Fabrics, Inc.* (S.D.N.Y. 1975) 411 F.Supp. 1404, 1406-1407, italics ours.)

Since LAR's purchase orders specifically provided that their terms could not be varied or waived without authorization in writing and that any additional terms added by the seller would be unacceptable and therefore not binding upon the parties, the arbitration clause in GCM's acknowledgements did not become a part of the contracts between the parties. (U.C.C., § 2-207, subd. (2)(a); cf. *John Thallon & Co., Inc.* v. *M & N Meat Company* (E.D.N.Y. 1975) 396 F.Supp. 1239, 1242.)

■ As to the first contract, LAR acknowledges that it agreed to arbitrate any disputes in California. However, as noted earlier, GCM has taken conflicting positions, arguing that it did not agree to arbitrate in California in its petition to compel arbitration in New York and then subsequently asserting that it did in fact make such an agreement in the instant motion to compel arbitration in California.

A party "cannot have it both ways. [It] cannot rely on the contract [provision], when it works to [its] advantage, and repudiate it when it works to [its] disadvantage." (*Tepper Realty Company* v. *Mosaic Tile Company* (S.D.N.Y. 1966) 259 F.Supp. 688, 692.) However, even if it can be said that GCM was mistaken in the first instance and has mere-

ly sought to correct itself in the instant action, there remains something of a question as to the intended situs of arbitration at the time the contract was formed.

In *Lea Tai Textile Co., Ltd.* v. *Manning Fabrics, Inc., supra*, 411 F.Supp. at page 1407, the court held that even a party's willingness to follow the terms of the other party's contract as to the situs of arbitration would not suffice to settle a conflict in the clauses. The court held: "This result suggested by the U.C.C. has a solid basis in logic and reason. While there is a strong federal policy favoring arbitration [citation], it remains a creature of contract. This Court will not impose its will on parties whose intentions are in clear conflict on this important issue. Arbitration under the Code of Hong Kong rather than the laws of New York may well affect important substantive rights. It is irrelevant to the issues of contract formation that the Hong Kong seller now concludes that it would be willing to arbitrate in New York."

Accordingly, we do not find GCM's assertion that its agreement with LAR provided for arbitration to be persuasive. However, even assuming there was an agreement to arbitrate, GCM's subsequent conduct bars the enforcement of that agreement.

■ GCM's contention that the instant action is not precluded by the doctrine of res judicata is without merit. "The doctrine of res judicata has long been recognized to have a dual aspect. (See *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439]; *Todhunter* v. *Smith* (1934) 219 Cal. 690, 695 [28 P.2d 916]. See also 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 148, p. 3293.) 'In its primary aspect the doctrine of res judicata operates as a bar to the maintenance of a second suit between the same parties on the same cause of action.' (*Clark* v. *Lesher* (1956) 46 Cal.2d 874, 880 [299 P.2d 865].) Also, the doctrine comes into play in situations involving a second suit, not necessarily between the same parties, which is based upon a different cause of action. There '[t]he prior judgment is not a complete bar, but it "operates [against the party against whom it was obtained] as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action."' (*Id.*, citations omitted.)" (*Henn* v. *Henn* (1980) 26 Cal.3d 323, 329-330 [161 Cal.Rptr. 502, 605 P.2d 10], fn. omitted.) A judgment of dismissal with prejudice may in some instances have a res judicata effect where there has been a ruling that is final as to a particular issue, even where "'[t]here has yet been *no final judg-*

*ment* on the merits. . . .'" (*Aetna Cas. and Sur. Co.* v. *Jeppesen & Co.* (D.Nev. 1977) 440 F.Supp. 394, 402.)

In its petition before the district court, GCM sought ". . . to compel arbitration between the parties of all claims, controversies and disputes between them, in accordance with the terms of the contracts [between them]." The court dismissed GCM's petition, based in part on 9 United States Code sections 2, 3[2] and 4, with prejudice after the parties ". . . entered into a stipulation on the record and in open Court, to the effect that the petition be withdrawn with prejudice."[3] The court noted that in so doing it was relying ". . . upon all of the prior papers and proceedings herein, [with] due deliberation having been held thereon."

Title 9 United States Code section 4 provides in pertinent part: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action. . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and *upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue,* the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . ." (Italics added.)

Thus, in dismissing the petition with prejudice the trial court may well have concluded that there was no agreement to arbitrate in California or elsewhere. Evidence to the effect that at the time of the dismissal GCM stated that the matter would not be arbitrated and agreed that the dispute would instead be litigated in the action pending before the Los Angeles Superior Court[4] is buttressed by the fact that

---

[2]See footnote 1, *ante.*

[3]GCM avers that it agreed to the stipulation after it appeared that its position contesting the striking of the phrase "in New York" and the substitution of "in California" was mistaken.

[4]In an uncontroverted declaration, Gary Freedman, LAR's attorney, stated: ". . . I was present in United States District Court for the Southern District of New York on February 17, 1978, at which time GCM Mills, Inc. was subject to a judgment dismissing its petition to compel arbitration. At that time the attorney for GCM Mills, Inc. agreed to the dismissal of the petition to compel arbitration, he stated that the matter would not be arbitrated and agreed that the dispute between the parties would be liti-

GCM subsequently answered LAR's complaint in that action, filed its own cross-complaint in which a fourth contract was brought into issue and participated in discovery. Almost nine months thereafter, GCM brought the instant motion to compel arbitration.

Nor can there be any question as to the jurisdiction of the New York district court to determine the arbitrability of the contracts herein. GCM chose to petition for arbitration in New York. That petition having been dismissed with prejudice by the district court and the process of the litigation pending in Los Angeles Superior Court being well underway, GCM cannot now by its concession that the agreement in fact provided for arbitration in California, rather than New York, challenge the jurisdiction of the New York court to determine whether an arbitration agreement existed between itself and LAR. (See *Dupuy-Busching General Agcy.* v. *Ambassador Ins.* (5th Cir. 1975) 524 F.2d 1275; *Continental Grain Co.* v. *Dant & Russell* (9th Cir. 1941) 118 F.2d 967.)

■ GCM's final contention that it has not waived whatever right to arbitration it may have had is also without merit. "'Where a party who has agreed to arbitrate any controversy that may arise prefers to take a controversy to court in the ordinary way, there comes a time in the course of the litigation when it would be unfair to permit one side to resort to arbitration over the protest of the other. That time is reached when the defendant files an answer on the merits, joining with plaintiff in rejecting arbitration and tendering the controversy to the court for trial.'" (*Lumbermens Mutual Casualty Co.* v. *Borden Co.* (S.D.N.Y. 1967) 268 F.Supp. 303, 312, citing *The Belize* (S.D.N.Y. 1938) 25 F.Supp. 663, 664; see *Chatham Shipping Co.* v. *Fertex Steamship Corp.* (2d Cir. 1965) 352 F.2d 291, 293; see 9 U.S.C. § 3.) However, "[t]he modern rule,...based on a liberal national policy favoring arbitration, seems to be that waiver or 'default' under the statute may not rest mechanically on some act such as the filing of a complaint or answer but must find a basis in prejudice to the objecting party." (*Batson Y. & F. M. Gr., Inc.* v. *Saurer-Allma GmbH-Allgauer M.* (D.S.C. 1970) 311 F.Supp. 68, 73, fn. omitted.) Thus, "[t]he essential test is whether the pursuit of a remedy other than arbitration has worked substantial prejudice to the other party." (*Commercial Metals Co.* v. *International Union Marine Corp.* (S.D.N.Y. 1968) 294 F.Supp. 570, 573; *Carcich* v. *Rederi A/B Nordie* (2d Cir. 1968) 389 F.2d 692, 696.)

---

gated in the action which was pending before the Superior Court for the State of California, County of Los Angeles."

In *Barber & Ross Company* v. *Cornell & Company* (D.D.C. 1965) 242 F.Supp. 825, 826, the court held that where "the litigation machinery had been substantially invoked and the parties were well into the preparation of a lawsuit by the time (some four months after the complaint was filed) an intention to arbitrate was communicated by the defendant to the plaintiff...the party seeking arbitration [was] in default."

In the case at bar, GCM had indicated to LAR that it would not arbitrate the dispute, but rather would litigate the matter in the pending superior court action.[5] Thereafter GCM answered LAR's complaint without asserting any affirmative defenses based on arbitration and filed a cross-complaint wherein a fourth contract was put in issue. Then, nearly nine months later, GCM made a motion in Los Angeles Superior Court to compel arbitration. In the meantime, LAR had incurred the monetary expense involved in the furtherance of the litigation.

"[T]he purpose of arbitration clauses [is] to provide a speedy and economical solution of business...disputes." (*Chatham Shipping Co.* v. *Fertex Steamship Corp., supra*, 352 F.2d at p. 294; *Joseph Muller Corp. Zurich* v. *Commonwealth Petrochem.* (S.D.N.Y. 1971) 334 F.Supp. 1013, 1019.) This purpose is not served by a dilatory motion to compel arbitration which, in the instant case, appears to be an attempt on the part of GCM to force a settlement on more favorable terms.

GCM's assertion that the trial court erred in applying California law to the waiver issue is not dispositive as the California courts have adopted the same standards and criteria as those used by the federal courts in this instance. Indeed, the California Supreme Court in *Doers* v. *Golden Gate Bridge, Highway etc. Dist.* (1979) 23 Cal.3d 180 [151 Cal.Rptr. 837, 588 P.2d 1261], specifically noted: "The approach taken here is similar to that taken by the federal courts. Under federal law, it is clear that the mere filing of a lawsuit does not waive contractual arbitration rights. The presence or absence of prejudice from the litigation of the dispute is the determinative issue under federal law. (*Merrill Lynch, Pierce, Fenner & Smith* v. *Lecopulos* (2d Cir. 1977) 553 F.2d 842, 845; *Demsey & Associates* v. *S.S. Sea Star* (2d Cir. 1972) 461 F.2d 1009, 1018; *Chatham Shipping Co.* v. *Fertex Steamship Corp.* (2d Cir. 1965) 352 F.2d 291, 293.)" (*Id.*, at p. 188, fn. omitted.)

---

[5]See footnote 4, *ante.*

Thus, while the trial court did err in applying California law, the error was not reversible as no prejudice resulted thereby. (See *Herbert* v. *Lankershim* (1937) 9 Cal.2d 409, 476-477 [71 P.2d 220]; *In re Eugene W.* (1972) 29 Cal.App.3d 623, 631 [105 Cal.Rptr. 736]; 6 Witkin, Cal. Procedure (2d ed. 1970) Appeal, § 290, p. 4277.)[6] We therefore find that under the circumstances presented herein, the prejudice sustained by LAR is sufficient to support the conclusion that GCM waived whatever rights to arbitration it may have had.

The judgment (order) is affirmed.

Allport, J., and Potter, J., concurred.

---

[6]GCM's argument that the waiver issue must be determined by the arbitrator, rather than the trial court, is also unpersuasive. The authority GCM cites for this proposition concerns the statute of limitations and the doctrine of laches, not the question of a waiver of the right to arbitrate per se. (See *Operating Engineers* v. *Flair Builders, Inc.* (1972) 406 U.S. 487 [32 L.Ed.2d 248, 92 S.Ct. 1710]; *Hanes Corp.* v. *Millard* (D.C.Cir. 1976) 531 F.2d 585; *Local 542, Int. U. of Op. Eng.* v. *Penn State Const., Inc.* (M.D.Pa. 1973) 356 F.Supp. 512.) While the principle of undue delay which underlies the laches doctrine may be one factor in the determination of whether there has been a waiver of the right to arbitration, "mere delay in seeking a stay of the proceedings without some resultant prejudice to a party [citation], cannot carry the day." (*Carcich* v. *Rederi A/B Nordie, supra*, 389 F.2d at p. 696, fn. omitted; *Lumbermens Mutual Casualty Co.* v. *Borden Co., supra*, 268 F.Supp. at p. 313.)