[No. B026905. Second Dist., Div. Three. July 21, 1988.]

KANEKO FORD DESIGN, Plaintiff and Appellant, v. CITIPARK, INC., et al., Defendants and Respondents.

1222

COUNSEL

Daniels, Baratta & Fine, Mary Hulett and William L. Kimball for Plaintiff and Appellant.

Lillick, McHose & Charles, Michael J. Bayard and Kent B. Goss for Defendants and Respondents.

OPINION

**DANIELSON, Acting P. J.**—This appeal presents a question of first impression regarding an application to stay an action to enforce a recorded claim of lien pending arbitration of a dispute which is relevant to that lien. (Code Civ. Proc., § 1281.5.)[1]

When a person commences a civil action to enforce a recorded mechanics' lien and, as authorized by section 1281.5, at the time of filing such action, files an application that such action be stayed pending the arbitration of any dispute claimed to be arbitrable under a written agreement

---

[1] All further section references are to the Code of Civil Procedure unless otherwise indicated.

which is relevant to the action to enforce the claim of lien, does the filing of that application, per se, stay such civil action? We hold that it does not.

The record on appeal, and the superior court file in this case, reflect the following facts and procedures.[2]

In November 1985, plaintiff and appellant Kaneko Ford Design (Kaneko) entered into a written contract (the contract) with defendant Citipark, Inc. (Citipark) to provide the interior design and specifications for a suite for Citipark (Citipark suite) on the ninth floor of Citicorp Plaza, an office building in downtown Los Angeles alleged to be owned by defendant Oxford Properties, Inc. (Oxford). The contract included a provision that all disputes arising out of the contract, which the parties could not solve by agreement within 10 days, should be decided by arbitration.

Kaneko alleged that it had performed all of its obligations under the contract on or before May 10, 1986.

On August 4, 1986, Kaneko duly recorded a mechanics' lien upon Citicorp Plaza in the sum of $48,168.30 for the interior design and specifications for Citipark suite, furnished under the contract, in the Citicorp Plaza property owned by Oxford.

On August 25, 1986, Kaneko commenced a civil action against Citipark and Oxford, defendants and respondents, by filing an unverified complaint alleging three causes of action, as follows: (1) Against Citipark and Does for breach of the written contract, which was incorporated by attachment and reference; (2) Against Citipark and Does, a common count for the reasonable value of the labor, materials and equipment furnished to Citipark by Kaneko; and (3) Against Citipark and Oxford, and Does, for foreclosure of the mechanics' lien. A copy of the mechanic's lien (claim of lien) was incorporated by attachment and reference.

At the same time that it filed its complaint, Kaneko also filed an "Application To Stay Proceeding Pending Arbitration," captioned the same as the complaint, stating that it "makes application to the Court for Order Staying further proceedings in the above-referenced matter pending arbitration of the disputes therein alleged . . . ." The application concluded with a paragraph captioned "ORDER" which read: "The Court, having reviewed the Complaint and Application presented therewith,

"IT IS HEREBY ORDERED that the further proceedings in the above-captioned case be, and hereby are, stayed pending arbitration of the con-

---

[2] In accordance with California Rules of Court, rule 12(a), we have ordered the entire superior court file transmitted to us to augment the record on appeal.

tractual disputes alleged in said Complaint, . . . until further Order of Court."

The order also provided spaces for dating and the signature of a judge of the superior court; those spaces have not been used. The original application bears the impression of the clerk's "FILED" stamp and the impression of the clerk's numbering device setting forth the case number.

Immediately after the filing of the complaint Kaneko instructed its attorneys not to proceed with further legal action in the matter because Kaneko was negotiating directly with Citipark to settle the case. Neither the summons and complaint nor the application for stay was served on any defendant at that time.

On or about September 19, 1986, a copy of the application was returned to the attorneys for Kaneko bearing on its face the handwritten inscription: "Rejected no P & A not ex parte matter 9/19/86 [illegible script] Donald W. Pike Commissioner."

That handwritten inscription does not appear on the copy of the original application in the clerk's transcript, nor on the original application in the superior court file.

Kaneko did nothing further in the civil action until October 7, 1986, and October 16, 1986, when it served its complaint on Citipark and Oxford, respectively. Kaneko did not serve its application for stay, which had then been rejected, on the defendants.

In order to facilitate settlement Kaneko's attorneys granted defendants two extensions of time in which to plead to the complaint. The last such extension expired on December 31, 1986, on which date Citipark and Oxford, represented by the same attorneys, filed individual unverified answers (§ 431.30, subd. (d)) generally denying the material allegations of the complaint and setting forth numerous affirmative defenses.

Kaneko concedes that, except for causing service of the complaint and granting extensions of time in which to plead, the attorneys for Kaneko took no action in the matter between the filing of the complaint (on Aug. 25, 1986) and February 5, 1987, when it filed a notice of motion and motion to stay proceeding pending arbitration, supported by points and authorities and the declaration of one of its attorneys.

Kaneko's motion to stay requested, in the alternative, (1) a stay of the pending action until an arbitration is had, under section 1281.4 and, (2) an order compelling arbitration of the controversy, under section 1281.2.

On March 4, 1987, Citipark served on plaintiff and filed a demand for bill of particulars, with which plaintiff has fully complied.

On March 12, 1987, Citipark and Oxford filed a joint opposition to plaintiff's motion to stay, supported by points and authorities and the declaration of one of their attorneys. They asserted that they had been prejudiced by the procedures followed by Kaneko in that they had incurred attorneys' fees of $2,300 as of December 31, 1986, as well as court costs, had spent a great deal of time and effort in the matter, and had been compelled to file answers to the complaint and thereby to disclose their legal theories and strategy.

Kaneko's motion was heard before Judge Paul Turner on March 19, 1987. The motion to stay proceedings was denied because of Kaneko's unreasonable delay in seeking arbitration and the resulting prejudice to the defendants, and the alternative request to compel arbitration under section 1281.2 was denied because defendant Oxford was not a party to the arbitration agreement and to compel arbitration as to one defendant and not the other might lead to inconsistent results.

Kaneko appealed from the order denying its request for arbitration and ruling that it had waived its right to arbitration.

### Contentions

Kaneko's contentions on appeal are summarized as follows: 1. The order denying a motion to compel arbitration is an appealable order; 2. An action to enforce a mechanics' lien is stayed if, simultaneously with the commencement of that action, the claimant also files an application that such action be stayed pending arbitration of any dispute claimed to be arbitrable under a written agreement which is relevant to the action to enforce the claim of lien; 3. There is not sufficient evidence to support the finding and ruling of the trial court; and 4. Section 1281.5 applies to civil actions in which the complaint contains causes of action other than for the enforcement of a mechanics' lien.

Respondents contend that Kaneko's appeal should be dismissed as untimely under California Rules of Court, rule 2.

### Discussion

1. *Kaneko's Notice of Appeal Was Filed Timely*

Respondents contend that this appeal should be dismissed as untimely because it is, in fact, an attempt to appeal from the "order" of Commissioner Pike found on the copy of Kaneko's original application for a stay of

proceedings pending arbitration, dated "9/19/86," which purports to "reject" that application. (See p. 1224, above.) Respondents' argument is that the Pike notation constitutes an "order" denying the application for stay and should have been appealed from, if at all, within not more than 180 days after the date of its "entry," as required by rule 2(a), California Rules of Court, and, since Kaneko's notice of appeal was filed on April 7, 1987, 200 days after the date of the Pike "order," the notice of appeal was not timely filed. Respondents then argue that since the appeal from Commissioner Pike's "order" is not timely, Kaneko cannot "reset the clock for purposes of appeal" by noticing an appeal from Judge Turner's order of March 19, 1987, denying respondents' motion for a stay. Respondents' contention is without merit.

The notice of appeal, which was filed April 7, 1987, is not from an order denying the stay of proceedings, it is from the trial court's order entered March 19, 1987, "[d]enying plaintiff's request for arbitration on the grounds that plaintiff failed to comply with . . . § 1281.5 and had waived its right to arbitration." The notice of appeal was timely filed.

We do not characterize the writing over the signature of Commissioner Pike on the copy of Kaneko's application which was returned to Kaneko as an "order"; at most, we can describe it only as a "notation." It is not on the original application in the superior court file and is not a part of the superior court file; it is not a formal order of the court (§ 1003); it has no legal effect.

2. *The Mere Filing of an Application for a Stay of Proceeding Under Section 1281.5 Does Not Create Such a Stay*

■ Section 1281.5 provides, in pertinent part: "Any person, who proceeds to record and enforce a claim of lien by commencement of an action pursuant to the provisions of [the law relating to mechanics' liens, Civil Code section 3082 et seq.] shall not thereby waive any right of arbitration which such person may have pursuant to a written agreement to arbitrate, if, in filing an action to enforce such claim of lien, the claimant at the same time presents to the court an application that such action be stayed pending the arbitration of any issue, question, or dispute which is claimed to be arbitrable under such agreement and which is relevant to the action to enforce the claim of lien."

An application is simply a request, which is "the act of asking for something." (Webster's Third New Internat. Dict. (1966) p. 1929.) Accordingly, the simple act of filing an application for a stay under section 1281.5 does not create such a stay. What is contemplated by the statute is that the court act upon the application by issuing an order. This is clear from the face of

section 1281.5, which requires the application for a stay be presented to the court. Moreover, an application for an order is a motion (§ 1003), and the court acts upon a motion by granting or denying the relief requested. Unless the court grants the motion for a stay, there is no stay of proceedings. (See, e.g., § 1281.4; *Ross* v. *Blanchard* (1967) 251 Cal.App.2d 739, 742 [59 Cal.Rptr. 783].)

Section 1281.5 contemplates that a motion be made to the court for an order granting a stay of the action to enforce a mechanics' lien pending arbitration; however, that section does not specify when that motion should be made. The section requires that an application for such stay be presented to the court at the same time that the action to enforce the claim of lien is filed. It is obvious that the notice of motion and motion for such stay cannot be served and filed until the action is commenced and service of the summons and complaint on the opposite party is accomplished. We hold that section 1281.5 requires that the summons and complaint in the action to enforce the claim of lien, and the application for stay, be served on the opposite party or parties within a reasonable time after the action is commenced, considering the facts and circumstances of each case, and that the notice of motion and motion to stay such action pending arbitration must be served on the opposite party or parties, and filed, as promptly thereafter as is reasonably possible. Such is the sense of the section.

The sole effect of filing the application for a stay under section 1281.5 is to preclude a finding of waiver of the right to arbitrate because of the filing of a complaint to enforce a mechanics' lien.

"[P]rior to the enactment of section 1281.5 in 1977, the filing of an action on a contract without seeking to preserve arbitration constituted a waiver of a contract provision for arbitration. (*Titan Enterprises, Inc.* v. *Armo Construction, Inc.* (1973) 32 Cal.App.3d 828, 832 [108 Cal.Rptr. 456] . . . .) In *Titan,* plaintiff, a subcontractor[,] filed an action against the contractor seeking to enforce a mechanic's lien. [¶] The rule in *Titan* created a 'damned if you do damned if you don't' situation for a plaintiff wishing to file a mechanic's lien, and to arbitrate his claim. If the time limits for filing a mechanic's lien were not followed, an action to enforce the lien could not be maintained. But, if the action to enforce the mechanic's lien was properly brought, the materialman would waive any rights to arbitration. Section 1281.5 came to the rescue. The legislative counsel's comment to the section points out that the filing of an action to enforce the lien does not constitute waiver of the right to arbitrate provided the claimant applies for a stay. (Legis. Counsel's com.; Stats. 1977, ch. 135, Assem. Bill No. 322.)" (*R. Baker, Inc.* v. *Motel 6, Inc.* (1986) 180 Cal.App.3d 928, 930-931 [225 Cal.Rptr. 849].)

### 3. *Waiver on Grounds Other Than Filing of Civil Action to Enforce Mechanic's Lien*

Nothing in section 1281.5, however, precludes a finding of waiver based on facts other than the act of filing the complaint. Waiver of the right to contractual arbitration may be found, despite the filing of an application for a stay under section 1281.5, based on facts other than the act of filing the complaint.

■ "Determination by a trial court that '[t]he right to compel arbitration has been waived by the petitioner' is one of three statutory grounds for withholding an order to arbitrate an otherwise arbitrable controversy. (Code Civ. Proc., § 1281.2, subd. (a).) Such a determination is ordinarily one of fact which ' "if supported by substantial evidence, is binding on an appellate court." ' An appellate court will reverse a finding of waiver by the trial court only ' "in cases where the record before the trial court establishes a lack of waiver as a matter of law." ' " (*Christensen* v. *Dewor Developments* (1983) 33 Cal.3d 778, 781-782 [191 Cal.Rptr. 8, 661 P.2d 1088].)

The issue of waiver is not resolved by reference to a single test. Rather, a finding on that issue is based on various factors, including (1) whether the party seeking arbitration previously had taken steps inconsistent with an intent to arbitrate; (2) whether that party had unreasonably delayed in seeking arbitration; and (3) whether that party had acted in "bad faith" or with "wilful misconduct." In addition, a finding of prejudice is necessary. (33 Cal.3d at p. 782.)

### 4. *Sufficiency of the Evidence to Support the Finding of Waiver*

■ Applying the above principles to the present case, we conclude that the court's finding that Kaneko waived its right to arbitration as to Citipark is supported by substantial evidence. After filing its complaint and application for a stay it did nothing to implement that application. Upon receiving information putting it on notice that its ex parte application for a stay was rejected, on September 19, 1986, Kaneko knew that no stay was in effect but continued to do nothing further to obtain a stay. Kaneko failed to implement its application for a stay by serving and filing an appropriate motion until February 5, 1987, approximately five and one-half months after the complaint and application for stay were filed. Moreover, it was not until that date that Kaneko for the first time sought an order to compel arbitration. In the meantime Kaneko participated in settlement negotiations with Citipark, did not notify Citipark that it intended to seek arbitration, and also obtained information as to the legal strategies of Citipark by means of the latter's answer to the complaint. Citipark, on the other hand, had not been served with the original application for a stay and, according to the

record, nothing was done prior to service of the February 5 motion to put Citipark on notice that Kaneko intended to seek arbitration of the controversy. This type of conduct is condemned by the *Christensen* court. (*Christensen* v. *Dewor Developments, supra,* 33 Cal.3d 778, 783-784.) Prejudice accrued to Citipark from such delay in the forms of time and effort spent, legal expenses and costs incurred, and the disclosure of its defenses and strategies to Kaneko. (See *Christensen, supra,* at p. 784; see also, *Lounge-A-Round* v. *GCM Mills, Inc.* (1980) 109 Cal.App.3d 190, 200-201 [166 Cal.Rptr. 920].)

Kaneko had unreasonably delayed in seeking arbitration and the procedures and steps which it followed were inconsistent with an intent to arbitrate. The cumulative effect of Kaneko's procedures was prejudicial to Citipark.

5. *Arbitrability of Controversy as to Oxford*

The court's finding that Oxford could not be compelled to arbitrate with Kaneko is also supported by substantial evidence. (*Parker* v. *Twentieth Century-Fox Film Corp.* (1981) 118 Cal.App.3d 895, 904-905 [173 Cal.Rptr. 639].) It is undisputed that Oxford was not a party to the contract. ■ "Arbitration is a matter of contract and a party cannot be required to arbitrate a dispute he has not agreed to submit. [Citations.]" (*Pacific Inv. Co.* v. *Townsend* (1976) 58 Cal.App.3d 1, 9 [129 Cal.Rptr. 489].)

DISPOSITION

The order is affirmed.

Arabian, J., and Croskey, J., concurred.