[Civ. No. 43845. Second Dist., Div. Four. Feb. 7, 1975.]

GEORGE H. ELLIANO, Plaintiff and Appellant, v.
ASSURANCE COMPANY OF AMERICA, Defendant and Appellant.

Counsel

Miller, Bronn, Brummett & Porter, Miller, Bronn & Brummett and John D. Miller for Plaintiff and Appellant.

Long & Levit and Richard B. Wolf for Defendant and Appellant.

Opinion

COLE, J.*—Plaintiff George Elliano's home, insured against fire perils by the defendant Assurance Company of America, was totally destroyed by fire on October 9, 1958. After a somewhat extended period of unsuccessful negotiations to settle the amount of the loss, Elliano filed suit on May 11, 1961. Judgment went against him, only to be reversed on appeal (*Elliano* v. *Assurance Co. of America* (1970) 3 Cal.App.3d 446 [83 Cal.Rptr. 509]). The remittur was filed in the trial court following the decision on that appeal on March 16, 1970.

On March 13, 1973, Elliano filed a notice of motion set for hearing on March 15, 1973, to specially set the case for trial on March 15, 1973, that assertedly being the last day on which the case could be brought to trial under the three-year provision of the Code of Civil Procedure, section 583 (present subd. (c)).[1] An order shortening time was secured.

The motion was heard on March 15, 1973, and trial was ordered to commence that day. That afternoon trial began. The full proceedings of the trial on March 15, 1973, are set forth in the margin.[2] Trial was by the

---

*Assigned by the Chairman of the Judicial Council.

[1]Actually, the last day to commence the retrial was March 16, 1973. (*Wixted* v. *Fletcher* (1961) 192 Cal.App.2d 706, 709 [13 Cal.Rptr. 734]; Code Civ. Proc., § 12.)

[2]"THE COURT: Elliano vs. Assurance Company of America. ¶ Are we ready for trial?
"MR. MILLER: Ready.
"MR. PORTER: Ready, your Honor.
"MR. WOLF: May I state for the record that the defendant wants to state for the record that we are not waiving notice of trial by appearing. ¶ We do not intend to waive notice of trial by appearing at this time.
"THE COURT: Very well. The record will so reflect. Are we ready for trial?
"MR. WOLF: Yes, your Honor.
"THE COURT: This is to proceed as a nonjury matter; is that correct, gentlemen?
"MR. MILLER: Yes.
"MR. PORTER: Yes.
"MR. WOLF: Yes.
"THE COURT: Call your first witness.
"MR. PORTER: We call George H. Elliano.

court. It resulted in a judgment for plaintiff Elliano. He appeals, contending in essence that he was not awarded enough money. The insurance company cross-appeals, complaining about the order of the trial court setting the case for trial forthwith on March 15, 1973. We consider first the cross-appeal.

### The Case Was Properly Set for Trial

When, on March 15, 1973, the court ordered that the second trial proceed that same day, the insurance company refused to waive notice of trial. The court stated that it regarded the order shortening time for the hearing of Elliano's motion to specially set the case for trial as also implying "shortening [notice of] the time for trial of this lawsuit."

"GEORGE H. ELLIANO, the plaintiff herein, called as a witness on his own behalf, was duly sworn, examined and testified as follows:

"THE CLERK: Take the witness stand and be seated, please.

"State your name for the record, please.

"THE WITNESS: George H. Elliano.

"DIRECT EXAMINATION

BY MR. PORTER.

"Q. Mr. Elliano, are you the plaintiff in this action before the court today?

"A. Yes, sir.

"Q. That is the case of George H. Elliano vs. Assurance Company of America, case No. SW C 835?

"A. Yes, sir.

"Q. Were you the owner of the premises located at 1460 West 182nd Street, Gardena, California?

"A. Yes, sir.

"Q. Did this premise contain within it a single family residence and appurtenant structures?

"A. Yes.

"Q. Did this residence burn down at some time in the past?

"A. Yes, it did.

"MR. WOLF: Your Honor, at this point, pursuant to the previous agreement in chambers, the defendant moves for a continuance until May 1st, in order to prepare adequately for the trial, because of the surprise of the short notice for the special setting of this case.

"THE COURT: Any objection?

"MR. PORTER: No objection, your Honor.

"THE COURT: Very well. Good cause appearing, the motion to continue is granted to May 1, 1973, at 9:00 a.m. in this court, Department D. ¶ Is notice waived, gentlemen?

"MR. MILLER: Notice waived.

"MR. PORTER: Notice is waived, your Honor.

"MR. WOLF: Notice is waived, your Honor.

"(At 1:55 p.m. the proceedings were continued to Tuesday, May 1, 1973, at 9:00 a.m.)."

We take the foregoing from a reporter's transcript lodged with this court in connection with a petition for an extraordinary writ filed by the insurance company. (Denied without opinion April 24, 1973. Assurance Company of America v. Superior Court, No. 402003.) At oral argument counsel stipulated to its use.

The record does not indicate that any notice at all was actually served on the insurance company. Trial started about two hours after the court ordered the matter to be specially set. The insurance company's first argument is that notice of trial may not legally be shortened to two hours, inasmuch as Code of Civil Procedure section 594, subdivision 1, requires that five days' notice be given.

A flaw in this argument is that the defendant insurance company, having actual knowledge of the trial, although not legal notice (*Bird* v. *McGuire* (1963) 216 Cal.App.2d 702, 713 [31 Cal.Rptr. 386]), appeared at the abbreviated trial proceedings which were had on March 15, 1973. Section 594, subdivision 1, applies, by its very terms, only when the court proceeds in the absence of the party complaining about notice. (*Bird,* at p. 714; *Sheldon* v. *Landwehr* (1911) 159 Cal. 778, 782 [116 P. 44].) It is in this context that *Bird* and *Simon* v. *Tomasini* (1950) 97 Cal.App.2d 115, 123 [217 P.2d 488], state that notice is jurisdictional, and it is likewise in the context of an absent defendant that *Cahill* v. *Verdier* (1921) 54 Cal.App. 465, 466 [202 P. 154], held that an order purporting to shorten time for the notice of trial was of no effect.

It is true that defense counsel stated that he did not intend to waive notice by appearing. Nevertheless, he did appear, and the statute is simply inapplicable. The short notice might entitle the insurance company to a continuance (and it received one after the trial formally commenced), but not to anything more. *(Sheldon* v. *Landwehr, supra.)*

The next argument presented on the cross-appeal is that two hours is an unreasonably short time between a hearing on a motion to specially set a case for trial, and the commencement of the trial itself. Indeed it is, if by such extremely short warning of trial a party is precluded from putting on his case or presenting a defense. But that is *not* what happened here. In arguing for the advanced trial setting, Elliano's counsel stressed that he would not object to a continuance once the trial had been commenced. That *is* what happened, the full trial, according to the findings and judgment, not taking place until June 12, 1973. (No explanation appears in the record for the continuance from May 1, 1973, the date to which the trial was originally continued—fn. 2, *supra,*—to June 12, 1973.)

■ The action of a trial court in ruling on a plaintiff's motion for an early trial setting is tantamount to that upon a motion to dismiss an action for failure to prosecute under the "two year" provision of section 583, subdivision (a) of the Code of Civil Procedure. (*General Ins. Co.* v.

*Superior Court* (1966) 245 Cal.App.2d 366, 370 [53 Cal.Rptr. 777].) That is, the question is one of the discretion of the court, to be disturbed only in cases of manifest abuse. (*Weeks* v. *Roberts* (1968) 68 Cal.2d 802, 806 [69 Cal.Rptr. 305, 442 P.2d 361]; *General Ins. Co.* at p. 370; *Beswick* v. *Palo Verde Hospital Assn.* (1961) 188 Cal.App.2d 254, 260 [10 Cal.Rptr. 314].) In this light, the insurance company's reliance on cases in which the trial court refused to order the early trial of a matter and was affirmed is not apropos. (*General Ins. Co., supra; Stuart* v. *Hollywood Turf Club* (1956) 146 Cal.App.2d 261 [303 P.2d 897]; *Legg* v. *United Benefit Life Ins. Co.* (1955) 136 Cal.App.2d 894 [289 P.2d 553], disapproved on other grounds in *Crown Coach Corp.* v. *Superior Court* (1972) 8 Cal.3d 540, 547 [105 Cal.Rptr. 339, 503 P.2d 1347].)

The insurance company points out that in *Weeks* v. *Roberts, supra,* 68 Cal.2d at page 808, the court cited these three cases and stated that they "may continue to control setting matters encompassing pretrial and trial for periods of less than 28 days." That language, however, does not mean that allowing a shorter time, or even practically no time at all, between the granting of a motion for early trial and the start of the trial is automatically erroneous. As is discussed next here, all of the circumstances must be looked at. Where the trial court has examined the history of the case, and makes provision to protect a defendant by an appropriate continuance or other device, and having done so determines that a courtroom is available and that a trial should proceed, nothing more is required. ". . . But the power to dismiss should be used 'in view of the facts of the entire situation,' taking into account any unusual circumstances, and acting to promote substantial justice. (E.g., *Daley* v. *County of Butte,* 227 Cal.App.2d 380, 394 [38 Cal.Rptr. 693]; *Ordway* v. *Arata,* 150 Cal.App.2d 71, 75-79 [309 P.2d 919]; *Jepsen* v. *Sherry,* 99 Cal.App.2d 119, 120-121 [220 P.2d 819, 822].)" (*Weeks* v. *Roberts, supra,* 68 Cal.2d 802, at p. 806, quoting with approval from *Vecki* v. *Sorensen* (1959) 171 Cal.App.2d 390, 393 [340 P.2d 1020].) It is particularly appropriate that this case be tried since defendant concedes that plaintiff *is* entitled to some recovery, and only disputes the amount.

Finally, the insurance company urges that the trial court looked only to the single factor of the imminent expiration of the three-year provision of Code of Civil Procedure section 583, subdivision (c), and did not consider other criteria. It is clear that the entire factual record must be considered (*General Ins. Co.* v. *Superior Court, supra,* 245 Cal.App.2d 366; *Grafft* v. *Merrill Lynch, Pierce, Fenner & Beane* (1969) 273 Cal.App.2d 379, 380-381 [78 Cal.Rptr. 42]). The insurance company argues that the court focused exclusively on the fact that denial of the

motion would prevent the case from being tried on the merits. That is simply not so. The court expressly stated that "[T]here are prejudices on both sides." It said that it was bothered by delay in filing an at issue memorandum, but that it preferred to try the case on its merits rather than rely on a technicality and dismiss the suit. It heard Elliano's present counsel urge that some delay was due to the fact that former counsel was a member of the state Legislature and then was appointed to be a supervisor, without adequate time to devote to the case. The trial court also stated that it had read the documents supporting and opposing the motion to set. These included opposing declarations outlining the history of the case, as well as points and authorities.

We find no basis for reversal in the trial setting facts here involved. The judgment will be affirmed insofar as the cross-appeal is concerned.

## Facts

The trial court found that the fire, in addition to destroying the structures on the insured premises, destroyed personal property and rendered the structures untenantable. Plaintiff incurred necessary and reasonable increased expenses of $2,250 over a period of two and one-half years, which was found to be the time required with due diligence and dispatch to repair or replace the property destroyed. Additionally, plaintiff incurred an expense of $125 for debris removal. The court further found that the actual cash value and fair market value of the dwelling and appurtenant structures, immediately before the fire, was $3,000, and that the destroyed personal property had a value of $2,486. Plaintiff was awarded judgment for $7,861, this being the total of these four sums. Finally, the court found that, on or before May 10, 1960, defendant offered in writing to pay Elliano $14,054.50 under the insurance policy on account of the loss sustained by him. Elliano did not accept the offer.

The court concluded that Elliano was not entitled to prejudgment interest because the written offer made to him was to pay an amount greater than that found to be due under the policy.

## Contentions

Plaintiff contends, first, that by reason of estoppel, he is entitled to the replacement cost of the destroyed structures without deduction for depreciation; second, that if this is not so he is entitled to the actual cash value of the premises and that this means replacement cost less

depreciation, and does not mean fair market value; third, that the policy was a "valued" policy and not an open policy; fourth, that evidentiary errors occurred in connection with valuation of the property; and fifth, that he is entitled to prejudgment interest. We reject the contentions and affirm the judgment.

### Plaintiff Is Not Entitled to the
### Replacement Cost of the Structures

■ Plaintiff's first argument is simply stated. The policy called for defendant to pay the full cost of repair or replacement without deduction for depreciation. This obligation was subject to the liability limits of the policy and was conditioned by a provision that defendant should not be liable to pay replacement cost "unless and until actual repair or replacement is completed." The contention is that because the fire occurred in 1958 and he has not yet been paid, he is entitled to recover from the insurance company the full policy amounts of $17,500 for the dwelling and $1,750 for appurtenant structures, a total of $19,250, and the insurance company is estopped to require rebuilding as a condition of this payment.

The argument continues by stating that the insurance company's agent fixed the amount of coverage based upon replacement cost estimates at the time the policy was issued, not too long before the fire. Therefore, plaintiff urges that his own reasonable expectations were that he was to receive this amount if the property was totally destroyed, and he could rely upon receiving such a sum in order to finance reconstruction. Since defendant "repudiated" the policy in plaintiff's eyes, Elliano argues that he is excused from performing the condition of rebuilding before being reimbursed.

We reject the defendant's argument that plaintiff failed to plead this contention. Plaintiff alleged damages in the full amount of the various policy coverages (except for $200) and that defendant had not paid that amount, which was alleged to be the amount of plaintiff's loss. The prayer was that plaintiff recover this amount. Further, the theory was adequately raised in the trial court.

However, on the merits plaintiff's argument is not well taken. The court found that defendant offered, in 1960, to pay to Elliano a sum in excess of $14,000. The court also found that the actual cash value and fair market value of the destroyed structures was $3,000. Since plaintiff admits that the portion of the 1960 settlement offer attributed to the

structures was $11,408, it is apparent that that offer greatly exceeded the ultimate loss which it was determined plaintiff suffered. Under these circumstances the principle of *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032], invoked by Elliano, is inapposite here. The 1960 offer, viewed in the light of the ultimate result, cannot be looked on as a breach of any obligation of good faith imposed upon defendant. We perceive no basis for an estoppel. The facts in *Terzian* v. *California Cas. Indem. Exch.* (1974) 42 Cal.App.3d 942 [117 Cal.Rptr. 284], a case relied upon by plaintiff, are totally different from those at bench. That case does not aid him.

### *"Actual Cash Value" Does Not Mean Replacement Cost Less Depreciation*

Plaintiff argues that the meaning to be fastened onto the term "actual cash value" in the event we reject his argument that he is entitled to replacement cost without deduction for depreciation, is replacement cost *less* depreciation. *Jefferson Ins. Co.* v. *Superior Court* (1970) 3 Cal.3d 398, 402 [90 Cal.Rptr. 608, 475 P.2d 880], is dispositive to the contrary. The court there construed a fire insurance policy written on the standard form prescribed by Insurance Code section 2071. The same policy form is involved here. The court flatly stated that " 'Actual cash value,' as used in section 2071 of the Insurance Code, is synonymous with 'fair market value.' " Continuing it held ". . . that the Legislature did not intend the term 'actual cash value' in the standard policy form . . . to mean replacement cost less depreciation. . . ." We, of course, are bound by that determination.

### *The Policy Was Not a Valued Policy*

Elliano's next contention, that the policy was a valued policy (Ins. Code, § 412) and not an open policy (Ins. Code, § 411) is primarily based upon the fact that the insurance agent who determined the amount of coverage to place in the policy when it was renewed a few months before the fire, did so on the basis of replacement cost. Plaintiff contends that the court "erroneously ruled evidence of replacement cost could be used only to limit the amount of recovery and not in valuing the loss . . ." The court expressly stated that evidence of how the policy figures were arrived at and relating them to replacement costs was some evidence of value. Therefore, the contention is not well founded.

The additional argument is made that the court erroneously excluded evidence of the custom of defendant and the insurance industry to treat

the policy as a "valued" policy in the event of total destruction. We disagree. The Insurance Code expressly provides: "§ 2052. Whenever the insured desires to have a valuation named in his policy insuring any building or structure against fire, he may require such building or structure to be examined by the insurer and the value of the insured's interest therein shall be fixed at that time by the parties. The cost of the examination shall be paid by the insured." and "§ 2053. A clause shall be inserted in such a valued policy, stating substantially that the value of the insured's interest in the insured building or structure has been thus fixed." We are referred to no clause in the policy which would comply with the requirement of section 2053, which is mandatory. (Ins. Code, § 16.)

Further, the insurance company's agent testified, with respect to the manner in which coverage limits were determined for the policy, that the amount of coverage on the dwelling ($17,500) was a figure which, he felt, "would put us within the 80 percent of replacement cost of the dwelling. We couldn't be exact in the replacement cost but we did have a 20-percent leeway. So I felt $17,500 was a reasonable amount." The other policy coverages were merely a percentage of the $17,500 figure. Thus, there is no indication that the parties "fixed the value of the insured's interest in the insured building or structure" as required by the statute. A valued policy is "seldom if ever written in this state" since it is subject "to the moral hazard of over evaluation." (*Breshears* v. *Indiana Lumbermens Mut. Ins. Co.* (1967) 256 Cal.App.2d 245, 250 [63 Cal.Rptr. 879].)[3]

*Valuation Testimony Was*
*Properly Received*

■ The insurance company produced an appraiser as a witness. Hired just a few days before the trial, he testified in accordance with a written report which he prepared and which was received in evidence. His testimony was that the fair market value of the property before the fire was $22,500 and after the fire $20,750, the loss in value therefore being $1,750. Among other things he took into account a listing of the property for sale just about two months before the fire and an offer to purchase, dated September 18, 1958, which was only three weeks before the fire. On cross-examination the appraiser testified that his opinion was rendered on the basis of the highest and best use of the property.

[3]Given the exceptional use of a valued policy, and the tentative way in which the amount of coverage was determined, there is no support for the argument that evidence was erroneously excluded, either as to whether the policy was a valued policy or as to the meaning of "actual cash value" as used in the policy.

Other evidence established that the offer of September 18, 1958, was to purchase the property for $22,500, including the then existing structure. After the fire plaintiff Elliano was the defendant in a specific performance suit brought by others to whom he had purportedly sold the property. Evidence was presented at the instant trial that Elliano produced a witness at the trial of the specific performance action who testified that the value of the property without improvements was between $19,500 and $21,000 and that the improvements were worth $6,250.

The appraiser also testified, in response to a question from the court, that the value of the improvements, exclusive of the land was $3,000. In its announcement of intended decision the trial court stated that it relied upon this testimony.

The basis for plaintiff's attack on the appraisal testimony is that it adopted an eminent domain approach to a fire insurance valuation problem. Plaintiff's assumption is that the land and not his destroyed house was the subject of valuation, and that this approach to the problem is prejudicially erroneous.

It is true that the appraiser took into account, in reaching his conclusions, the value of the land with the improvements as they existed before the fire and contrasted this with the value of the land itself after the fire. In accordance with Elliano's argument, for present purposes we assume without so holding that it was the improvements, and not the land itself, which were the subject of the insurance policy. (But, cf., *Hughes* v. *Potomac Ins. Co.* (1962) 199 Cal.App.2d 239, 247-248 [18 Cal.Rptr. 650].) That does not mean that the method of·valuation used by the witness was improper. Fair market value was the criterion adopted in the testimony, and that is the equivalent of actual cash value, the term used in the policy. (*Jefferson Ins. Co.* v. *Superior Court, supra,* 3 Cal.3d 398, 402.) It is not unreasonable to establish that value by reference to the before and after value of the entire premises. Indeed, the evidence other than the appraiser's testimony which we have referred to above, itself is enough to support the result. Plaintiff received an offer from third parties only three weeks before the fire to buy it for $22,500. And about three years after the fire he produced evidence that the property, without the destroyed improvements, was worth $19,500 and $21,000. We cannot say that the trial court erred in admitting this testimony.

Other objections to the appraiser's testimony were properly overruled. (Evid. Code, § 801, subd. (b).)

## *Elliano Is Not Entitled to*
## *Prejudgment Interest*

■ The last contention made by Elliano is that under either subdivision of Civil Code section 3287,[4] he is entitled to prejudgment interest. As stated above, the court declined to order prejudgment interest to be paid inasmuch as defendant offered in writing, in 1960, to pay more to plaintiff than the court ultimately found to be due. Elliano stresses that the 1960 offer did not include any amount for additional living expenses, or for the costs of cleanup, although the judgment awarded him $2,250 and $125, respectively, for these items. Therefore, he states, the 1960 offer was not a valid tender, because it was not for full performance, as required by Civil Code section 1486. Further, plaintiff argues, the insurance company required that a general release be executed before it would pay the amount offered in settlement. The contention is that this condition likewise precluded the offer from being a valid tender, sufficient to stop the running of interest under Civil Code section 1504, since section 1494 of that code requires that an offer of performance must be free from any conditions which the creditor is not bound to perform.

"Damages are deemed certain or capable of being made certain within the provisions of subdivision (a) of section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage." (*Esgro Central, Inc.* v. *General Ins. Co.* (1971) 20 Cal.App.3d 1054, at p. 1060 [98 Cal.Rptr. 153].) Here the dispute did *not* center on the issue of liability, but rather on the basis of computation of damages. ". . . Subdivision (a) of section 3287 does not authorize prejudgment interest as a matter of law where the amount of damage, as opposed to only the determination of liability, depends upon a judicial determination based upon conflicting evidence, and is not ascertainable from truthful data supplied by the claimant to his debtor." (*Esgro,* at p. 1062.) Here no proof of loss was ever filed by Elliano, the

---

[4]Section 3287: "(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state.

"(b) Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but *in no event earlier than the date the action was filed.*"

insurance company having been held to have waived that requirement. (*Elliano* v. *Assurance Co. of America, supra,* 3 Cal.App.3d 446.)

The fact that defendant's offer did not include any amounts for additional living expenses, or for cleanup, is not sufficient to trigger liability for interest. We are not told whether the failure to include provision for either of such sums in the 1960 settlement offer was because the amount of damages was disputed, or because coverage was denied. Further, the amounts involved in these two coverages aggregated only about 15 percent of the total amount offered by defendant. (Cf., *Esgro,* at p. 1061.)

Finally, with respect to subdivision (a) of section 3287, we note that the amount offered ($14,054.50) was over one and three-quarters times as much as plaintiff was ultimately awarded ($7,861.00). In *Marysville Woolen Mills* v. *Smith* (1918) 178 Cal. 786 [175 P. 13], a party had been tendered more than he was entitled to receive. On appeal he urged that he should have been awarded interest on the amount of the judgment in his favor. Conceding that ordinarily he should receive interest, the Supreme Court declined to modify the judgment to make the award. It stated that the trial court doubtless was of the view that as the party refused to take more than he was entitled to when it was offered to him, no rule of equity would be violated by at least refusing interest. We know that the trial court was of that view here, since it expressly so concluded.

A fortiori, Elliano is not entitled as a matter of law to a discretionary award of interest under subdivision (b) of section 3287.

### Conclusion

Going beyond the particular issues discussed above, we have examined this case to see if there is any support for plaintiff's repeated claim that defendant had acted in bad faith as a matter of law in its conduct toward him. This claim finds no support in the pleadings as such.

Central to this case is a fact which sharply distinguishes it from others where liability based on bad faith was found (e.g., *Gruenberg* v. *Aetna Ins. Co. supra,* 9 Cal.3d 566; *Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452 [113 Cal.Rptr. 711, 521 P.2d 1103]; *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376 [89 Cal.Rptr. 78, 47 A.L.R.3d 286]). That fact is that negotiations following the fire produced an offer from defendant, in 1960, of almost twice the amount ultimately

found by the court to be due. Sensitive as we are to the obligations placed on insurers to deal in good faith with their insureds, no breach of that obligation can be found here.

On each appeal, the judgment is affirmed. Each party will bear his or its own costs.

Jefferson, Acting P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied February 26, 1975, and petitions of both parties for a hearing by the Supreme Court were denied April 2, 1975.