[Civ. No. 62032. Second Dist., Div. Five. June 30, 1982.]

STANLEY JOEL WEISMAN, Plaintiff and Respondent, v. JAMES JOHNSON, JR., et al., Defendants and Appellants.

**Counsel**

Strote & Whitehouse, Joel R. Strote, Philip I. Moncharsh and Cheryl R. Avirom for Defendants and Appellants.

Samuel Reisman for Plaintiff and Respondent.

OPINION

HASTINGS, J.—Appellants James Johnson, Jr., also known as Rick James (hereinafter James), and Stone City, Inc. (hereinafter Stone City) appeal from an order denying their motion to compel plaintiff and respondent Stanley Joel Weisman (hereinafter Weisman) to arbitrate a contractual dispute and an action for attorneys fees and costs.

Weisman is a solicitor, barrister, and Queen's counsel living and practicing in the Province of Ontario, Canada. James is a rhythm and blues pop singer. Stone City is a California corporation with its principal place of business located in the County of Los Angeles, State of California, and James is the chief executive officer, sole director, and sole shareholder of the corporation.

In April of 1972 Weisman and James entered into a written agreement pursuant to which James became indebted to Weisman for $12,061.47 and 10 percent of James' gross compensation as consideration for moneys loaned and nonlegal services rendered by Weisman to James. The agreement provided that the parties agreed to arbitrate "any and all disputes arising hereunder . . . in accordance with the arbitration act of the Province of Ontario."

In June of 1973 Weisman and James entered into another written agreement whereby James became indebted to Weisman in the sum of $6,504.24 and 10 percent of James' gross compensation as defined therein. This agreement contained no arbitration provision and did not incorporate, by reference or otherwise, the terms and provisions of the 1972 agreement. In addition to the sums owed by James to Weisman in the two written agreements James also became indebted to Weisman for a further sum of $18,565.71 for money loaned by Weisman to James and for $7,488.00 as the reasonable value of legal services rendered by Weisman to James.

In April of 1979 Weisman made demand upon James for all sums owing under the contracts. James replied denying any liability. No claim to arbitrate the issue was made by either party at that time.

In December of 1979 Weisman filed a complaint against James in Los Angeles County for breach of contract, common counts, and accounting. James filed a motion to quash service and to stay or dismiss the action. Weisman opposed the motion, but it was not heard because

the court quashed the substituted service under which Weisman had sought to obtain jurisdiction over James.

Weisman amended the complaint to add Stone City as a party-defendant alleging that it was and still is the alter ego of James and was liable to Weisman for all sums owed by James. Personal service of the summons and complaint was made upon James and Stone City. James moved the trial court to dismiss the action on the ground that he was not a resident of California, that the Los Angeles Superior Court was an inconvenient forum, and the case should be tried either in Ontario, Canada or in New York State. Weisman opposed the motion and was successful in demonstrating that James had substantial contacts in California and had recently filed for divorce in the Los Angeles Superior Court alleging that he was a Los Angeles County resident, and that Stone City was incorporated in California and had its headquarters in Los Angeles.

Approximately one month later James, through his counsel, demanded that the disputes with Weisman be resolved by arbitration. Weisman refused and James filed his petition to compel arbitration which was denied by the trial court after a full hearing on the merits. This appeal followed.

The trial court stated its reasons for denying the petition in a minute order dated September 2, 1980, as follows:

"1. The court finds no agreement to arbitrate the 1973 contract. CCP section 1281.2, penultimate paragraph comes into play here, making it necessary for the court in any event to delay an order of arbitration.

"2. The letter of August 4, 1980 (Exhibit E to the declaration of Mr. Weisman) in opposition to this motion is telling evidence to this court that the petition to arbitrate is not brought in good faith and that, rather than intending to arbitrate, it is the intention of James Johnson, Jr. to do everything in his power to avoid litigating, in any form, the matters complained about. Under no circumstances, in light of Johnson's refusal 'to stipulate to personal jurisdiction over him by the Ontario Courts, or Ontario Arbitration Panel' could it be said that he was doing anything but attempting to avoid arbitration, as well as this litigation. Thus the court holds that petitioners have waived their right to arbitrate."

## DISCUSSION

██ Waiver of a contractual right to arbitrate is ordinarily a question of fact and determination of this question, if supported by substantial evidence, is binding on an appellate court. Under the general rule this question is left to the trial court where there is substantial evidence to support it. However, in cases where the record before the trial court establishes a lack of waiver as a matter of law, the appellate court may reverse a finding of waiver made by the trial court. (*Doers* v. *Golden Gate Bridge*, etc. *Dist.* (1979) 23 Cal.3d 180 [151 Cal.Rptr. 837, 588 P.2d 1261]; *McConnell* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1980) .105 Cal.App.3d 946 [164 Cal.Rptr. 751].) The minute order above, paragraph 2, clearly tells us that the trial court denied the petition to compel arbitration based on waiver and bad faith. ██ We find there is substantial evidence to support waiver, and that there was no error as a matter of law.

No single test delineates the nature of the conduct of a party that will constitute a waiver. (*Davis* v. *Blue Cross of Northern California* (1979) 25 Cal.3d 418, 426 [158 Cal.Rptr. 828, 600 P.2d 1060].) California courts have found a waiver of the right to demand arbitration in a variety of contexts ranging from situations in which the party seeking to compel arbitration has previously taken steps inconsistent with an intent to invoke arbitration to instances in which the petitioning party has unreasonably delayed an undertaking of the procedure. Decisions also hold that bad faith or willful misconduct of a party may constitute a waiver. (*Davis* v. *Blue Cross of Northern California, supra.*) Our present case contains typical examples of the conduct referred to.

When Weisman in April of 1979 demanded payment of the considerable sums due under both contracts, James replied through his counsel with the somewhat cynical statement, "I have reviewed same with Mr. James and Mr. James denies, generally, specifically and disjunctively each and every allegation set forth therein." This legalistic response to a claim for substantial amounts of money based upon breach of contract was practically inviting a lawsuit. It is devoid of any suggestion that negotiations, arbitration or any other course of action customary in like situations might first be appropriate. After the lawsuit was filed by Weisman, James, without claiming or asserting any right to arbitration, not only moved for an order dismissing the action by alleging that he was a nonresident of California, but also insisted that the place of trial was an inconveninent forum and the case should be tried either in On-

tario, Canada or in New York State, where he allegedly resided. James' motion was denied. It was not until July 11, 1980, over one year and three months following Weisman's initial demand, that James for the first time purported to assert a right to arbitrate the dispute. But it was not these delaying tactics alone on which the trial court relied in finding waiver. Great emphasis was placed on a finding of bad faith.

The following facts support this finding. James claimed and still does that he has never been a resident of the State of California. The facts before the court, however, were strongly to the contrary. Weisman presented evidence, not refuted by James, that James had recently performed in California and had held a newspaper interview, accompanied by his picture, from his "huge, rambling Los Angeles home." But more damaging was a certified copy of a petition for dissolution of marriage filed May 3, 1979, in Los Angeles Superior Court, wherein James as petitioner declared under penalty of perjury that he had been a resident of California for at least six months and of Los Angeles for at least three months prior to the filing of the petition for dissolution. These obvious misstatements of facts were first made when James was not seeking arbitration, but was trying to move the case to another forum for trial, namely Canada or New York. Finally, the court relied on a letter filed as an exhibit from James' attorney to Weisman's attorney that stated, "... our client's position is that the dispute between him and your client must be arbitrated ... that such arbitration should proceed in Toronto, and that all legally required procedures for arbitration must be followed, *including proper personal service. He is not willing to stipulate to personal jurisdiction over him by the Ontario courts, or Ontario Arbitration Panel*, although he will not purposely attempt to evade any lawful and proper service." (Italics added.)

The above letter quite clearly speaks for itself and, along with the claim of nonresidency, indicates the attitude of James. Unmistakably it is saying that James demands arbitration, but in no way will he cooperate to bring it to fruition. It states in effect that Weisman must not only drop his action filed in California but he then must proceed to file for arbitration in Ontario, Canada and *then* effectuate personal service on James. This is not a showing of cooperation, but is evidence that James was in fact trying to delay a hearing on the merits. In addition to the issue of bad faith that *Davis* v. *Blue Cross of Northern California, supra*, 25 Cal.3d 418, mentioned as an element in determining waiver, another case has stated the concept in a different way. In *Frey & Horgan Corp.* v. *Superior Court* (1936) 5 Cal.2d 401, 404-405 [55 P.2d

203], the court stated, "The agreement to submit the dispute to the arbitration committee is an agreement to cooperate in that proceeding. It is presumed that the contract was made in good faith. Therefore it was an agreement to submit to the jurisdiction within which the arbitration must operate in order to give it the effect contemplated by the contract and by the law." A proceeding to compel arbitration is in essence a suit in equity to compel specific performance of a contract. (*Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473 [121 Cal.Rptr. 477, 535 P.2d 341].) Accordingly, equitable principles come into play and the actions of a party seeking to compel arbitration can be considered by the trial court and this court. Specifically, no one can take advantage of his own wrong. (Civ. Code, § 3517.)

Although the court cited the letter of August 4, 1980, as telling evidence that James was not acting in good faith, James seems to ignore the letter in his opening and reply briefs. Page upon page is taken up in both briefs in citing statutory and decisional law concerning the basic rules of arbitration well known to this court and counsel. Cases are cited for the propositions that arbitration is highly favored by the courts, that waiver must be clearly shown, that there can be no waiver until there has been at least some decision on the merits of the case, there must be a specific finding of prejudice to respondent Weisman before waiver can be found, and the court was speculating on the issues of bad faith. All of the cases and law cited by James concern issues and factual situations substantially different than the case before us. None of the cases stand for the proposition that James urges, namely that under the facts of this case there was no waiver as a matter of law. For example, he cites *Doers* v. *Golden Gate Bridge* etc. *Dist., supra,* 23 Cal.3d 182, as standing for the proposition that there must be some decision on the merits of a case in a court of law before there can be a waiver of arbitration. This case is misunderstood by James. In *Doers* the *plaintiff* had originally filed an action in court against the defendant but subsequently changed course and sought arbitration. The *Doers* opinion merely states that filing of a complaint is not in and of itself sufficient evidence of a waiver. Some kind of action on the merits is necessary in such a situation. Here, James did not file a complaint in the present action in any court. As defendant in the case he acted in bad faith to delay any action on the complaint. After being unsuccessful in getting a court of his own choosing, based on misrepresentations of fact, he insisted on arbitration, but stated that he would not voluntarily submit to such arbitration even though it was based on his own demand.

Only one other argument of James requires a response, to wit, that a specific finding of prejudice to Weisman was necessary before waiver could be effectuated. Not so. Weisman in his points and authorities in opposition to James' petition to compel arbitration argued that he had been prejudiced by James' delaying tactics. He cited to the court *Lounge-A-Round* v. *GCM Mills, Inc.* (1980) 109 Cal.App.3d 190 [166 Cal.Rptr. 920], where the court held that a party incurring monetary expense involved in the furtherance of the litigation demonstrated sufficient prejudice to support a dismissal of a petition to arbitrate. The prejudice in our present case is identical to that shown in *Lounge-A-Round*, and a specific finding of prejudice, when such has been demonstrated to the trial court, is unnecessary.

The order denying arbitration is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.