[Civ. No. 6957. Fifth Dist. Aug. 30, 1983.]

NATIONAL FARM WORKERS SERVICE CENTER, INC.,
Plaintiff and Appellant, v.
M. CARATAN, INC. et al., Defendants and Respondents;
TENNECO FARMING COMPANY, INC., Defendant and Appellant.

COUNSEL

Farnsworth, Saperstein & Brand and Charles E. Farnsworth for Plaintiff and Appellant.

Young, Wooldridge, Paulden, Self, Farr & Hugie and G. Neil Farr for Defendant and Appellant.

Littler, Mendelson, Fastiff & Tichy, Jordan L. Bloom and William F. Terheyden for Defendants and Respondents.

**OPINION**

**CAETON, J.**\*—On January 3, 1975, National Farm Workers Service Center, Inc. (hereafter Service Center) filed a complaint for breach of contract in the Kern County Superior Court. Named as defendants were Tenneco Farming Company, Inc. (hereafter Tenneco) and 67 additional parties. Of these 67 parties, 43 were defendants at trial and are now respondents in this proceeding.

The complaint alleged that the Service Center, a nonprofit entity, was a third-party beneficiary of collective bargaining agreements between the United Farm Workers Organizing Committee and the 68 named defendants. Pursuant to the contract, the defendants were to make certain contributions to the Service Center. It was alleged that the defendants had breached the contract "by failing to make any payments . . . for the harvest of 1972, as per the agreement. . . ." The Service Center sought $6 million in damages and interest in the sum of $36,400.

Thereafter, the various defendants filed answers to the Service Center's first amended complaint.[1]

On November 5, 1979, a court trial commenced. As was noted above, 44 defendants remained in the action. On November 15, 1979, the trial was concluded.

On November 9, 1981, the court issued its findings of fact and conclusions of law. On the same date, the court entered its final judgment. The

---

*Assigned by the Chairperson of the Judicial Council.

[1]The record does not contain the first amended complaint.

Service Center prevailed as against all defendants and were awarded varying sums as to each defendant. The total award was approximately $258,000. Tenneco was held liable for damages in the sum of $26,885. The Service Center was also awarded prejudgment interest at the rate of 7 percent per annum calculated from the date of trial to the date of judgment. The total amount of interest awarded was approximately $36,000. Interest as against Tenneco amounted to $3,763.90.

On January 5, 1982, the Service Center appealed from that part of the judgment which had denied prejudgment interest for the period preceding the trial date.

On January 8, 1982, Tenneco cross-appealed from the adverse judgment it had suffered.

### STATEMENT OF THE FACTS

The Service Center is a nonprofit corporation which was organized in 1966 to "engage exclusively in charitable and educational activities with farm workers and agricultural laborers in the United States, . . ." The Service Center provides medical, educational, and welfare services. In 1967, the Service Center was granted tax exempt status by both the state and federal governments.

During July and August 1970, the United Farm Workers Organizing Committee entered into collective bargaining agreements with respondents who were all growers. At the same time, respondents agreed to make certain payments to the Service Center. With the exception of the Tenneco contract,[2] respondents were required to pay two cents per box for all table grapes, tree fruit, and other agricultural products which were picked and packed by the box, plus five cents per man hour for all covered workers engaged in harvesting grapes (other than table grapes) and other agricultural products not picked and packed by the box. Respondents were to remit their payments weekly.

---

[2] The Tenneco contract provided: "4. Payments by the Company for the term of this agreement to the National Farm Workers Center, Inc., as set forth below are subject to and dependent on appropriate governmental approval of said Center and the benefits which it provides. No payments shall be made until such approval has been obtained:

"1. $.02 per box for table grapes.

"2. A fixed amount in cents per ton for each ton of grapes picked (excluding table grapes). To arrive at this figure the parties will develop a formula·which will produce an average of approximately 5¢ per hour for all varieties of such grapes picked based on past performance."

Prior to the 1972 harvest, Tenneco, as well as the rest of the growers, formed the opinion that the payments to the Service Center were unlawful. On May 9, 1972, Tenneco informed the United Farm Workers Organizing Committee that its payments would cease. In making this move, Tenneco relied on the opinion of its legal counsel that the payments were unlawful under 29 United States Code section 186. Thus, appellant did not receive any payments for the 1972 harvest season.

## I.

### DID THE TRIAL COURT ERR IN HOLDING THAT THE SERVICE CENTER WAS NOT BOUND BY THE GRIEVANCE PROCEDURES CONTAINED IN THE CONTRACT BETWEEN THE UNITED FARM WORKERS ORGANIZING COMMITTEE AND TENNECO?

Section XIX of the contract between the United Farm Workers Organizing Committee and Tenneco contains procedures for resolving grievances. In relevant part, section XIX provides that: "The parties to the Agreement agree that as to all differences, misunderstandings, or disputes which arise between the Company and the Union out of the interpretation or application of this Agreement, . . ." certain procedures will be employed.

The trial court held that the foregoing provision was inapplicable to the Service Center for three reasons: (1) the agreement providing for payments to the Service Center was contained in a contract separate from the one which contained section XIX; (2) section XIX applied solely to disputes between the union and Tenneco; and (3) in any event, Tenneco had waived its right to have section XIX enforced. Since we find substantial evidence to support the trial court's finding that Tenneco waived its right to have section XIX enforced, we will not address the remaining reasons.

The trial court made the following finding: "18. Defendants waived any right to limit the Farm Worker Fund dispute to the grievance procedure by suggesting, in 1972, that the legality question be resolved by a 'court ruling' or in some other manner between defendants' attorneys and attorneys for the UFWOC. Defendants further waived their right to rely upon the arbitration defense by their inaction in this proceeding. Although defendants filed answers to the complaint in May 1975, they wholly failed to move this court for either an order staying this proceeding pending arbitration pursuant to Section 1281.4, California Code of Civil Procedure, or for an order compelling arbitration pursuant to Section 1281.2, California Code of Civil Procedure. Such inaction by defendants constituted a waiver of arbitration by defendants in this action."

■ As is well settled, a party to a collective bargaining agreement may waive its right to arbitration under the contract. (*Local 659, I.A.T.S.E.* v. *Color Corp. Amer.* (1956) 47 Cal.2d 189, 194-195 [302 P.2d 294].) Thus, "a failure by a party to proceed to arbitrate in the manner and at the time provided in the arbitration provision is a waiver of the right to insist on arbitration as a defense to an action on the contract. [Citations.]" (*Id.,* at p. 195.)

Whether there has been a waiver of the right to arbitrate is a question of fact, and a finding of waiver must be upheld on appeal if it is supported by substantial evidence. (*Sawday* v. *Vista Irrigation Dist.* (1966) 64 Cal.2d 833, 836 [52 Cal.Rptr. 1, 415 P.2d 816]; *Weisman* v. *Johnson* (1982) 133 Cal.App.3d 289, 293 [183 Cal.Rptr. 792].)

Although there is no single test as to what conduct will constitute a waiver, the courts "have found a waiver of the right to demand arbitration in a variety of contexts ranging from situations in which the party seeking to compel arbitration has previously taken steps inconsistent with an intent to invoke arbitration to instances in which the petitioning party has unreasonably delayed an undertaking of the procedure." (*Weisman* v. *Johnson, supra,* 133 Cal.App.3d 289, 293.)

■ Here, the trial court held, in part, that Tenneco had waived its right to arbitrate "by suggesting, in 1972, that the legality question be resolved by a 'court ruling' . . . ." This finding is amply supported by substantial evidence.

On May 9, 1972, Tenneco executed a letter which announced its intention to discontinue payments to the Service Center. In relevant part, the letter provided that the payments would not be made until "*either after a court ruling as to legality of these payments,* or after a jointly administered trust that complies with the law is created." (Italics added.)

The Tenneco letter constituted a clear waiver of the right to arbitrate. Having unilaterally decided to discontinue its payments to the trust fund, Tenneco had an opportunity to seek arbitration. Instead, Tenneco urged that a court ruling would cause it to recommence payments. This action was clearly inconsistent with an intent to arbitrate. (*Weisman* v. *Johnson, supra,* 133 Cal.App.3d 289, 293.) The letter constitutes substantial evidence in support of the trial court's finding of waiver. (*Sawday* v. *Vista Irrigation Dist., supra,* 64 Cal.2d 833, 836.)[3]

---

[3]Frank Denison, former general counsel for the National Farm Workers, also testified that none of the defendants ever requested arbitration.

Moreover, there is a second reason in support of the trial court's finding. The court found that Tenneco had waived its right to arbitrate by failing to invoke the arbitration machinery. In particular, Tenneco failed to seek court-ordered arbitration after the Service Center filed its complaint. Clearly, this inaction constituted a waiver of the right to arbitrate insofar as it was Tenneco who initiated the dispute by discontinuing its payments. (*Weisman* v. *Johnson, supra,* 133 Cal.App.3d 289, 293.)

■ Lastly, Tenneco urges that "the question of Tenneco's alleged waiver of arbitration could have and should have been determined by an arbitrator." This contention is meritless. *California State Council of Carpenters* v. *Superior Court* (1970) 11 Cal.App.3d 144 [89 Cal.Rptr. 625], cited by Tenneco, states that "[a] party to a collective bargaining agreement calling for arbitration of disputes can waive the right to arbitration and it is for the court to determine whether there has been such waiver. [Citations.]" *(Id., at p. 156.)*

The trial court's finding that Tenneco waived application of the arbitration clause found in section XIX is upheld.

## II.

### Did the Trial Court Err in Holding That 29 United States Code Section 186 Did Not Proscribe the Payments Which Tenneco Was Contractually Obliged to Pay to the Service Center?

■ As its second defense to the Service Center's breach of contract cause of action, Tenneco urged that payments to the Service Center were unlawful under 29 United States Code section 186. The trial court held to the contrary. This ruling is upheld.

In relevant part, 29 United States Code section 186 provides: "(a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

"(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

"(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the

employees of such employer who are employed in an industry affecting commerce; . . ."

Tenneco urges that payments to the Service Center were unlawful in that the Service Center was either a "representative" of its "employees" under section 186(a)(1), or a "labor organization" which represented its "employees" within the meaning of section 186(a)(2). As will be seen, this contention is utterly meritless.

Section 186 is contained within the Labor Management Relations Act. (See 29 U.S.C. § 141 et seq.) Section 142(3) provides that the term "employee" is to be defined pursuant to section 152. Section 152(3) provides, in turn, that the term employee "shall not include any individual employed as an agricultural laborer, . . ." Thus, section 152(3) provides, in effect, that agricultural workers are not "employees" within the meaning of section 186(a)(1) and (2). (See *Joint Council of Teamsters* v. *Assoc. Gen. Cont.* (C.D.Cal. 1980) 520 F.Supp. 3, 4, affd. (9th Cir. 1981) 662 F.2d 531, cert. den., 455 U.S. 1021 [72 L.Ed.2d 139, 102 S.Ct. 1718]; *United Farm Workers Organizing Committee* v. *Superior Court* (1971) 4 Cal.3d 556, 565, fn. 18 [94 Cal.Rptr. 263, 483 P.2d 1215].)

In the trial court, Tenneco stipulated that "no non-agricultural employees were covered by the collective bargaining agreement with United Farm Workers during 1972, . . ." Given this admission, it is manifest that section 186 did not proscribe payments to the Service Center. Since Congress exempted agricultural workers from the coverage of section 186, Tenneco was bound to fulfill its contractual obligations.

As a last stab at overturning the trial court's ruling, Tenneco urges that some members of the Service Center were engaged in nonagricultural labor. In this regard, Tenneco relies on the testimony of two defendants, Jack Pandol and Peter Castiglione, who both testified that they employed union members who did not engage in agricultural labor. Pandol employed approximately a dozen workers who performed duties in his packing shed. Similarly, Castiglione employed between 30 and 40 union members in his packing shed.

Based on this testimony, Tenneco urges that the National Farm Workers fell within the parameters of section 186 since at least some of its members were nonagricultural employees. While this is a tenable argument, it fails for the simple reason that the United Farm Workers abandoned representation of the shed workers prior to the 1972 harvest season.

At trial, the Service Center introduced a letter which announced the union's intention to abandon its representation of shed workers. The letter was dated April 15, 1972. Based on this letter, the trial court made the factual finding that "at some time prior to the 1972 harvest, UFWOC renounced any intention to represent such employees [shed workers] by April 1972, . . ." Since Tenneco did not formally curtail its payments to the Service Center until May 9, 1972, it is manifest that such payments were not unlawful under section 186.[4]

In short, section 186 was not a bar to the contractual provision which required Tenneco to make payments to the National Farm Workers. Congress carefully exempted agricultural laborers from the coverage of section 186. Such being the case, the trial court correctly held that section 186 could offer no solace to Tenneco.

## III.

### DID THE TRIAL COURT ERR IN DENYING TENNECO'S MOTION FOR JUDGMENT MADE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 631.8?

In presenting its case-in-chief, the Service Center relied solely on documentary evidence and stipulations. At the close of the Service Center's case, the defendants moved for judgment pursuant to Code of Civil Procedure section 631.8.[5] The motion was premised on the theory that the Service

---

[4]Tenneco raises two additional arguments. It is first contended that the Service Center did not satisfy the requirements of section 186(c). This argument is irrelevant since the National Farm Workers were not subject to section 186. Tenneco also contends that the union impermissibly maintained control of the board of directors of the Service Center. Again, this argument is irrelevant insofar as section 186 did not apply to the National Farm Workers.

[5]Code of Civil Procedure section 631.8 provides: "(a) After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make findings as provided in Sections 632 and 634, or may decline to render any judgment until the close of all the evidence. The court may consider all evidence received, provided, however, that the party against whom the motion for judgment has been made shall have had an opportunity to present additional evidence to rebut evidence received during the presentation of evidence deemed by the presenting party to have been adverse to him, and to rehabilitate the testimony of a witness whose credibility has been attacked by the moving party. Such motion may also be made and granted as to any cross-complaint.

"(b) If it appears that the evidence presented supports the granting of the motion as to some but not all the issues involved in the action, the court shall grant the motion as to those issues and the action shall proceed as to the issues remaining. Despite the granting of such a motion, no final judgment shall be entered prior to the termination of the action, but the final judgment in such action shall, in addition to any matters determined in the trial, award judgment as determined by the motion herein provided for.

"(c) If the motion is granted, unless the court in its order for judgment otherwise specifies, such judgment operates as an adjudication upon the merits."

Center had waived its right to payments under the contract by failing to institute grievance procedures. After the motion was argued, the Service Center moved to reopen its case in order to elicit the testimony of Frank Denison, the former general counsel for the National Farm Workers. The defendants opposed the motion to reopen the case. The court heard Denison's testimony and then denied the motion for judgment.

On appeal, Tenneco now urges that the trial court erred in permitting the Service Center to reopen its case. Tenneco's contention must fail in the final analysis since it has failed to show that it was prejudiced by the court's ruling.

"The purpose of Code of Civil Procedure section 631.8 is to enable a trial court which, after weighing the evidence at the close of the plaintiff's case, is persuaded that the plaintiff has failed to sustain his burden of proof, to dispense with the need for the defendant to produce evidence. [Citations.]" (*Heap* v. *General Motors Corp.* (1977) 66 Cal.App.3d 824, 829 [136 Cal.Rptr. 304].) Thus, section 631.8 serves the same purpose as does section 581c, which permits the court to grant a nonsuit in a jury trial. (See *Weyburn* v. *California Kamloops, Inc.* (1962) 200 Cal.App.2d 239, 244 [19 Cal.Rptr. 357].) However, unlike a motion for nonsuit which may be brought only by the defendant, a section 631.8 motion may be brought by either party. Generally, however, it is the defendant who brings the motion.

At present, the case law is entirely unclear as to whether the court has the discretion to permit a plaintiff to reopen his case once the defendant has brought a section 631.8 motion. *Charles C. Chapman Building Co.* v. *California Mart* (1969) 2 Cal.App.3d 846 [82 Cal.Rptr. 830] illustrates the unsettled nature of the law. There, as here, the plaintiff moved to reopen his case after a section 631.8 motion was made. The appellate court declined to decide whether section 631.8 permits a plaintiff to reopen his case. (*Id.,* at pp. 858-859.)[6] However, the court did hold that any error involving section 631.8 must result in a miscarriage of justice before a reversal will be ordered. (*Ibid.*)

The *Chapman Building Co.* holding applies to the instant case. Tenneco has made absolutely no showing that its motion for judgment would have been granted had Denison's testimony not been taken. Under these circum-

---

[6]As the *Chapman Building Co.* court noted, the trial court must permit a plaintiff to reopen his case when a motion for nonsuit is made. (2 Cal.App.3d 846, 858.) While it could be argued that the same rule should apply as to section 631.8 motions, the court did not so hold because a section 631.8 motion and a motion for nonsuit evoke "different procedures." (*Id.,* at p. 858, fn. 2.)

stances, the error, if any, in taking Denison's testimony was nonprejudicial. (2 Cal.App.3d 846, 858-859.)

■ Lastly, Tenneco urges that the trial court erred in denying its section 631.8 motion in that there was no showing that the contract containing the Service Center provision was supported by adequate consideration. Being an affirmative defense, lack of consideration must be alleged in the answer to the complaint. (*Williams* v. *Kinsey* (1946) 74 Cal.App.2d 583, 603 [169 P.2d 487].) Having failed to plead the defense, Tenneco was not entitled to rely on it in the trial court. (*Ibid.*)

IV.

### DID THE TRIAL COURT ERR IN DENYING PRETRIAL INTEREST TO THE SERVICE CENTER?

■ At trial, the Service Center contended that it was entitled to prejudgment interest from the date of the breach of the contract until the date of the final judgment. The trial court did not agree with this contention. The court awarded prejudgment interest from the first day of trial since the sums owing were ascertained as of that day, when the parties entered a stipulation. In denying prejudgment interest for the period preceding trial, the court made the following finding: "20. The parties disagreed up to the time of trial as to the contractual coverage of juice grapes and work done by employees of labor contractors, and hence the amounts of damages allegedly owing were not readily ascertainable. The sums allegedly owing, if any, from defendants to plaintiffs were not certain because up to the first day of trial plaintiffs were still asking additional sums for juice grapes and the issue of whether contributions to the Fund were required for employees of labor contractors was still in dispute. Hence, the total sums allegedly owing were in issue. The total sums allegedly due by Giannini Packing were in issue until the second day of trial."[7]

■ Civil Code section 3287, subdivision (a),[8] provides that a person may recover prejudgment interest where the damages owing to him are

---

[7]Respondent Giannini Packing Company did not enter the stipulation until the second day of trial since it was necessary to correct the figures it had originally given. Thus, Giannini was held liable for prejudgment interest as of the second day of trial.

[8]Civil Code section 3287, subdivision (a), provides: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state."

"certain, or capable of being made certain by calculation, . . . upon a particular day, . . ." "Under this provision, prejudgment interest is allowable where the amount due plaintiff is fixed by the terms of a contract, . . ." (*Leaf* v. *Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371, 375 [120 Cal.Rptr. 749].) If damages are "certain," interest must be awarded as a matter of right. (*Id.,* at p. 376; *Levy-Zentner Co.* v. *Southern Pac. Transportation Co.* (1977) 74 Cal.App.3d 762, 798 [142 Cal.Rptr. 1].) Moreover, "[d]amages are deemed certain or capable of being made certain within the provisions of subdivision (a) of section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage. [Citations.]" (*Esgro Central, Inc.* v. *General Ins. Co.* (1971) 20 Cal.App.3d 1054, 1060 [98 Cal.Rptr. 153]; accord *Elliano* v. *Assurance Co. of America* (1975) 45 Cal.App.3d 170, 182 [119 Cal.Rptr. 653].) ▮ Application of the foregoing rules will reveal that appellant was entitled to prejudgment interest from the date of the breach of the contract.

The trial court denied pretrial interest because the parties engaged in a pretrial dispute as to whether the contractual payments included juice grapes and the work done by employees of labor contractors. ▮ ▮ ▮ ▮ This rationale for denying pretrial interest is incorrect.[9]

▮ Section 3287, subdivision (a), provides that interest should be awarded so long as damages are "capable of being made certain by calculation, . . ." In this case, there was no doubt that damages could be easily calculated. The sole dispute between the parties involved a question of contract interpretation as to whether payments were owing for juice grapes and work performed by employees of labor contractors. Regardless of the resolution of this dispute, the fact remained that damages could be readily calculated once it was determined whether the disputed categories were to

---

[9]Tenneco contends the denial of pretrial interest must be upheld since the trial court's ruling is supported by substantial evidence. However, Tenneco does not cite any authority for the proposition that this court is faced with a question of fact. We believe this court is presented with a question of law.

Generally, "a determination is one of ultimate fact if it can be reached by logical reasoning from the evidence, but one of law if it can be reached only by the application of legal principles. [Citations.]" (*Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 698, fn. 3 [139 Cal.Rptr. 700, 566 P.2d 602].) The question before this court would appear to be one of law. The evidence on the issue of the "certainty" of damages was essentially undisputed at trial. Thus, it is necessary to apply legal principles in order to determine if pretrial interest should have been awarded.

be included in the sum total of damages.[10] Thus, damages were "certain" in that the dispute between the parties concerned only a question of liability and was not in any way directed toward the basis upon which damages were to be computed. (*Esgro Central, Inc.* v. *General Ins. Co., supra,* 20 Cal.App.3d 1054, 1060.)

*Rabinowitch* v. *Cal. Western Gas Co.* (1967) 257 Cal.App.2d 150 [65 Cal.Rptr. 1] establishes this point. There, the parties to a lease agreement were engaged in a battle as to the proper interpretation of ambiguous provisions in the lease. The amount of rent due under the lease depended upon whose interpretation was adopted. The court held that the prevailing party was entitled to prejudgment interest. (*Id.,* at p. 161.) In so holding, the court reasoned that "[t]he existence of a bona fide dispute between the parties as to the amount owing under an express contract does not render that sum 'unliquidated.' [Citation.] . . . Once the court determined, . . . what the parties intended by the ambiguous language of the instrument, the ascertainment of damages was purely a matter of calculation." (*Ibid.*) The same is true of this case.[11]

Respondents cite the following statement made by the Service Center's counsel at the time the parties entered their stipulation as to the amount of produce harvested and the amount of labor attendant thereto. "I will agree that until this document was introduced as a stipulated exhibit that the pre-

---

[10]In this regard, it is essential to note that the trial court made a factual finding that the harvest figures contained in the parties' stipulation "were derived from defendants' own sources, . . ." Respondents urge that this finding is not supported by substantial evidence. We disagree.

The record contains two letters from respondents' attorneys which clearly indicate that respondents were in possession of records which reflected the yield from the harvest and the amount of labor which was attendant thereto. The trial court could rationally infer that the stipulation entered at trial had been drawn from those records. This court is required to uphold such a reasonable inference. (*Epley* v. *Hiller* (1954) 128 Cal.App.2d 100, 104 [274 P.2d 696].)

[11]*Levy-Zentner Co.* v. *Southern Pac. Transportation Co., supra,* 74 Cal.App.3d 762, cited by respondents, is inapposite. There, a fire destroyed the plaintiffs' property. The defendant was held liable for the fire. Prejudgment interest from the time of the fire was denied because the plaintiffs failed to adequately apprise the defendant of the amount of their damages. (*Id.,* at pp. 801-802.) The case at bar is obviously distinguishable in that it was the defendants, not the plaintiff, who possessed the information relating to the amount of damages.

*Distefano* v. *Hall* (1968) 263 Cal.App.2d 380 [69 Cal.Rptr. 691], also cited by respondents, is inapposite as well. There, a contractor sued to recover under a construction contract. The defendants counterclaimed for faulty construction. Although the contractor prevailed, he was denied prejudgment interest. The appellate court affirmed because the "complex factual and legal issues" in the case made it impossible for the defendants to ascertain what they owed the contractor. (*Id.,* at p. 389.) As has already been explained, the evidence concerning damages was undisputed in this case. Thus, *Distefano* offers no solace to respondents.

cise figure that was due from the defendants had not been precisely ascertained, but that will be the limit of my stipulation." Respondents urge that the cited statement is an admission that the amount of damages was not "certain" until the time of trial. We disagree. Counsel was merely stating the obvious reality that the parties had never agreed as to the amount of damages. Counsel's statement was in no way an admission that respondents were unable to calculate the damages which they owed to the Service Center.

Respondents next contend that pretrial interest should be denied because the Service Center permitted several years to pass between the time the contract was breached and the time the cause went to trial. Lacking citations of authority, this contention falls by the wayside. (*Fenton* v. *Groveland Community Services Dist.* (1982) 135 Cal.App.3d 797, 806, fn. 5 [185 Cal.Rptr. 758].)

Lastly, respondents urge that pretrial interest was properly denied because the complaint sought a significantly higher amount of damages than was eventually awarded. As respondents note, "[t]he mere fact that there is a slight difference between the amount of damages claimed and the amount awarded does not preclude an award of prejudgment interest [citation], . . ." (*Coleman Engineering Co.* v. *North American Aviation, Inc.* (1966) 65 Cal.2d 396, 408 [55 Cal.Rptr. 1, 420 P.2d 713].) Although they cite no authority for this proposition, respondents then conclude that prejudgment interest may be denied merely because of a difference between the amount of damages sought and the amount eventually awarded. This conclusion is contrary to the policy underlying Civil Code section 3287.

The rationale behind section 3287 is that "where a defendant does not know the amount he owed and cannot ascertain it except by accord or judicial process, he cannot be in default for not paying it [citation]." (*Distefano* v. *Hall, supra,* 263 Cal.App.2d 380, 388.) In the instant case, the trial court held that the harvest figures contained in the parties' stipulation were derived from respondents' records. Under these circumstances, there can be no prejudice to respondents merely because the Service Center prayed for a substantially greater award than they received. Since it was respondents who possessed the relevant records, the Service Center was merely safeguarding its interests by praying for a large recovery. The excessive prayer should not serve to defeat an award of pretrial interest.[12]

---

[12]As a final matter, we note that the Service Center raises an additional argument as to 32 respondents. The Service Center urges that the discovery responses of the 32 respondents revealed that those respondents neither harvested juice grapes nor utilized labor contractors. It is concluded that pretrial interest should have been awarded as against the 32 respondents

In short, prejudgment interest should have been awarded as of the time of the breach of the contract. Having the harvest records in their possession, respondents were capable of ascertaining the amount of damages owing. Under these circumstances, an award of prejudgment interest was proper. (*Distefano* v. *Hall, supra,* 263 Cal.App.2d 380, 388.)[13]

The judgment against Tenneco is affirmed insofar as it was held liable for damages. The judgment against all defendants is reversed insofar as it denies pretrial interest. The case is remanded to the trial court for the limited purpose of calculating the award of pretrial interest.

Franson, Acting P. J., and Hanson (P. D.), J., concurred.

since there was absolute certainty as to the amount of damages they owed.

For their part, the 32 respondents contend only that 4 of their number (Aslan Packing Company, Jack Constance, Gene Radovich, and Dan Tudor and Sons) did in fact either harvest juice grapes or utilize labor contractors. Thus, at least 28 respondents implicitly concede that they are liable for pretrial interest. However, as we have indicated above, pretrial interest should be awarded as against all defendants.

[13]At oral argument, respondents cited the recent case of *Leff* v. *Gunter* (1983) 33 Cal.3d 508 [189 Cal.Rptr. 377, 658 P.2d 740]. *Leff* is entirely consistent with our analysis herein. (*Id.,* at pp. 518-520.)